**Marc A. STEFANO, Plaintiff,**

v.

**FIRST UNION NATIONAL BANK OF VIRGINIA, Defendant.**

**No. 96–1831–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 21, 1997.

Robert F. Flinn, Mathew D. Ravencraft, Flinn & Beagan, Vienna, VA, for Plaintiff.

Daniel S. Fiore, Law Office of Daniel S. Fiore, Arlington, VA, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

Plaintiff here sues a bank for conversion of twenty-three checks on which he was a co-payee, contending that the bank improperly negotiated the checks without his endorsement. The parties' cross motions for summary judgment present the following questions:

(i) whether the Uniform Commercial Code, as enacted in Virginia,[1] displaces plaintiff's common law conversion claim,

(ii) whether the Code's statute of limitations bars a conversion action with regard to any of the checks,

(iii) whether there was "delivery" of the checks to plaintiff as required by the Code to establish conversion,

(iv) whether plaintiff authorized negotiation of the checks without his endorsement; and

(v) the quantum of plaintiff's interest in each check.

For the reasons that follow, the parties' motions must be granted in part and denied in part.

## I.

The pertinent facts may be succinctly stated. In 1993, Anthony Stefano, father of Marc Stefano, and Leo Stefano, learned that he was suffering from a terminal illness. A retired civil servant living in McLean, Virginia, Anthony, by prudent planning and management, had acquired a sizeable portfolio of bonds and certificates of deposit. After consultation with his sons, Anthony decided to avoid estate and probate taxes by ensuring that the bonds and certificates would not pass through his probate estate. To this end, he directed that various of his bonds and certificates be titled jointly in his name and that of one or the other, or both, of his sons. At his father's direction, plaintiff, who is a licensed attorney, took steps to accomplish the retitling of the bonds and certificates. As a result, interest and call[2] checks were made payable jointly to the father and one or both sons and sent to the father's address in McLean, Virginia.

After Anthony's death on April 10, 1993, Leo, as executor, actively administered his father's estate. In this connection, Leo was charged with the management of several rental properties which Leo and Marc, through inheritance, now owned. Also, Leo moved into his father's McLean, Virginia residence and therefore received all correspondence mailed to that address, including the periodic interest and call checks from the retitled bonds and certificates of deposit.

In November 1993, Leo established a Virginia Limited Partnership titled "II S Limited Partnership," and subsequently opened an account under the partnership name with Ameribanc, First Union's predecessor in interest. During the period from December 1993 through June 1994, Leo received in the mail delivered to the McLean residence twenty-three checks payable in part to plaintiff.[3] Leo then placed the stamped endorsement of his II S partnership on the back of each check,[4] and presented the checks to First Union for deposit into the II S partnership account. First Union accepted all twenty-three checks, and credited the proceeds to the account of II S Limited Partnership, an entity in which Marc Stefano has never had any interest. At no time did Marc Stefano personally endorse any of the checks.

On December 30, 1996, Marc Stefano filed this action against First Union, basing his suit on common law conversion (Count I), conversion under the Uniform Commercial Code (Count II), and negligence (Count III). The plaintiff voluntarily withdrew the negligence count on July 3, 1997, and by Order dated September 22, 1997, defendant's mo-

---

**1.** Virginia Code § 8.1–101 *et seq.* (hereinafter "the Code").

**2.** "Callable bonds" reserve in the issuer the right to retire the obligation on the bond before the maturity date by paying a specific amount, the call price, to the purchaser. See BLACKS LAW DICTIONARY 204 (6th ed.1990). Call checks therefore represent the issuer's payment of that specified amount.

**3.** The twenty-three checks made payable to Marc Stefano fall into the following four categories: (i)

one check made payable to Marc Stefano, individually; (ii) eighteen checks made payable jointly to Anthony Stefano and Marc Stefano; (iii) two checks made payable to Leo Stefano and Marc Stefano; and (iv) two checks made payable to Anthony Stefano, Leo Stefano, and Marc Stefano. The total face value of the twenty-three checks is $80,058.26.

**4.** Each check was marked by Leo:
For Deposit Only
II  S Limited partnership
P.O. Box 10591
McLean, VA 22102

tion for summary judgment as to punitive damages was granted.[5] Still before the Court are the parties' cross motions for summary judgment.

## II.

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. This standard is met where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A court must believe the evidence of the non-movant, and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Yet, a "mere scintilla" of evidence is not enough. To the contrary, when viewed in the light most favorable to the non-moving party, the evidence must be sufficient for a reasonable jury to find in favor of that party. *See Id.* at 249–50, 106 S.Ct. at 2511.

## III.

Both claims remaining in the complaint are for conversion, one under Virginia's Commercial Code, and the second under Virginia's common law. Defendant contends that Virginia Code § 8.3A–420, the Code section providing for an action for conversion, operates to oust or displace the common law in this area, thereby requiring dismissal of plaintiff's common law claim.

■ Analysis properly begins with the terms of Virginia Code § 8.1–103, which sets the standard for Code displacement of the common law. This section provides that "unless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant ... supplement its provisions." The teaching of this section is plain: The common law cause of action for conversion is displaced by the Code only in circumstances where Virginia Code § 8.3A–420 applies. In other circumstances, common law conversion survives. This sensible accommodation of the Code and the common law is a recognition of the strengths of both, as numerous courts have noted. *See, e.g., Great Lakes Higher Educ. Corp. v. Austin Bank of Chicago*, 837 F.Supp. 892, 896 (N.D.Ill.1993) (where an alternative remedy exists under the Code for a factual situation, the common law is displaced on that same point); *McNulty v. Great American Insurance Co.*, 727 F.Supp. 45, 49 (D.Mass.1989) (same); *Equitable Life Assurance Soc'y of United States v. Okey*, 812 F.2d 906, 908–09 (4th Cir.1987) (same). Thus, the question of displacement here depends on whether § 8.3A–420 applies to the instant facts.

■ Virginia Code § 8.3A–420, which provides an action for conversion where a "bank makes or obtains payment with respect to a negotiable instrument for a person not entitled to enforce the instrument," clearly encompasses the instant dispute and provides plaintiff with a remedy for the alleged wrong. Specifically, by accepting the checks for deposit to the II S partnership account without a co-payee's endorsement, First Union "[made] payment with respect to a negotiable instrument for a person [Leo] not entitled to enforce the instrument." Virginia Code § 8.3A–420.[6] Because § 8.3A–420 fits these facts, it follows by operation of § 8.1–103 that § 8.3A–420 displaces the common law and is plaintiff's exclusive remedy.

■ This conclusion is buttressed by the distinction between the common law and the Code as to the elements necessary to state a cause of action for conversion. While delivery is not required to maintain a common law

---

5. As the record provided no support for the allegation that defendant acted with "actual malice," *See Peacock Buick, Inc. v. Durkin*, 221 Va. 1133, 277 S.E.2d 225 (1981), punitive damages were improper. *Stefano v. First Union National Bank of Virginia*, No. 96–1831–A (E.D.Va. September 22, 1997).

6. Nor is there any doubt that absent authorization, Leo alone was not entitled to enforce the checks because an instrument payable to two or more persons jointly may be negotiated only by all persons acting jointly. Virginia Code § 8.3A–100(d).

conversion claim,[7] § 8.3A–420(a)(ii) specifically precludes an action for conversion by any payee who has "not receive[d] delivery of the instrument either directly or through delivery to an agent or co-payee." Where the Code establishes the elements necessary to state a claim, or provides for limitations on standing to maintain a claim, the common law is displaced to the extent it differs from these requirements. *See Equitable Life*, 812 F.2d at 909.

Plaintiff's reliance on the first sentence of § 8.3A–420, which states that "the law applicable to conversion of personal property applies to instruments," is misplaced. This sentence merely states the general rule that where a claim for conversion of a negotiable instrument is not specifically covered by § 8.3A–420, then the claim will be governed by the common law of conversion as it applies generally to personal property. *See* Virginia Code § 8.1–103. It does not disrupt, as plaintiff suggests, the Code's stated design that particular provisions of the act may displace a cause of action under the common law. *See Id.* In sum, then, § 8.3A–420 is plaintiff's sole conversion remedy.

### IV.

■■■ As plaintiff's sole remedy is that provided by the Code, it follows that the applicable statute of limitations period is that supplied by the Code. Under the Code, an action for conversion of an instrument must be commenced within three years after the cause of action accrues. Va.Code § 8.3A–118(g). A cause of action for conversion of negotiable instruments under § 8.3A–420 accrues when the bank "makes or obtains payment" with respect to the instrument. *See* Va.Code § 8.01–230; *See also, First Inves-*

*tors Corp., v. Citizens Bank, Inc.*, 757 F.Supp. 687, 690–92 (W.D.N.C.1991), *aff'd* 956 F.2d 263 (4th Cir.1992) (conversion actions, as a general rule, accrue upon the conversion itself rather than upon its discovery). As plaintiff filed the instant action on December 30, 1996, more than three years after three of the checks at issue were deposited, recovery on these checks is barred.[8]

### V.

Defendant further contends that the Code's delivery requirement bars plaintiff from recovering on the eighteen checks made payable to Marc and Anthony, jointly. None of the checks, the defendant contends, were delivered to either payee, Anthony having passed away and Marc residing in California. Instead, these checks were delivered to the McLean address, which had been Anthony's residence, but was now Leo's.

The so-called "delivery requirement," which precludes an action for conversion by a payee who did not "receive delivery of the instrument either directly or through delivery to an agent or a co-payee," was added by the 1993 revisions to resolve the question whether a payee who never received an instrument is a proper plaintiff in a conversion action. *See* Virginia Code § 8.3A–420, Official Comment 1. While answering the question in the negative, the Code clearly accepts certain forms of "constructive" delivery as sufficient. Moreover, the Code also makes clear that in cases of multiple payees, it is sufficient that delivery is made to any of the payees or agents of payees. Thus, as the Official Comment confirms, delivery in person is not necessary; proper delivery can be made to a mailbox or to an agent of any of the payees.[9]

---

**7.** *See Universal C.I.T. Credit Corp., v. Kaplan*, 198 Va. 67, 92 S.E.2d 359, 365 (1956) (delivery not required so long as claimant possesses an interest in the goods).

**8.** Specifically, the three checks barred are:

(1) one check payable to Marc Stefano and Anthony Stefano in the amount of $450.00, deposited on 12/07/93;

(2) one check payable to Marc Stefano and Anthony Stefano in the amount of $975.00, deposited on 12/08/93;

(3) one check payable to Marc Stefano and Leo Stefano in the amount of $6,077.00, deposited on 12/15/93.

**9.** The Official Comment to section 8.3A–420 states:

The payee receives delivery when the check comes into the payee's possession, as for example when it is put into the payee's mailbox. Delivery to an agent is delivery to a payee. If a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all of the payees.

■ This constructive delivery principle, applied here, compels the conclusion that the requisite delivery occurred. Although plaintiff, a California resident, did not personally receive delivery of any of the checks, each was delivered to the residence of Anthony, a co-payee on eighteen of the remaining twenty checks. And, although Anthony was deceased, Leo was Anthony's executor who received each of the checks as an agent of the estate. Thus, each of the checks was properly delivered to an agent of one of the payees.

■ Seeking to avoid this conclusion, defendant argues that plaintiff's asserted 100% interest in all checks made payable to Marc and Anthony, jointly, dictates a finding that plaintiff did not receive delivery of any of these checks. Defendant reasons that if Anthony's estate had no actual interest in the checks, then delivery could not properly be made to the estate's agent. Under the defendant's rationale, delivery to one payee constitutes delivery to a co-payee only if both payees retain an interest in the check. Yet, the Code suggests otherwise; § 8.3A–420 clearly contemplates that payees eligible to sue may have little or no interest in a multiple payee check, and that a conversion claim may be maintained even where delivery is made to a payee with no actual interest in the check.[10] Accordingly, defendant's attempt to limit the scope of delivery under § 8.3A–420 must fail.[11]

■ In sum, then, checks made payable to Marc and Anthony jointly and received in the mail by Leo as Anthony's executor and agent, have been properly "delivered" under the Code. But no "delivery" occurred with respect to the one check made payable solely to Marc, for Leo was not Marc's agent for the receipt of mail. As to this check, therefore, the absence of delivery bars recovery under § 8.3A–420.[12]

## VI.

■ Finally, genuine issues of material fact exist as to the issues of authorization and quantum of interest. As to authorization, plaintiff contends that Leo was never authorized to deposit, cash, or otherwise negotiate any of the checks subject to the instant dispute on Marc's behalf. He adduces an affidavit and supporting correspondence to this effect. Yet, First Union asserts the existence of an agreement between the brothers whereby Leo was authorized to deposit the checks, and apply the proceeds toward the management of the rental properties owned by Marc and Leo. In support of this contention, First Union offers the statement of Leo to the effect that for months, he used interest and call income to pay Marc's mortgage payment and Marc's share of expenses relating to the jointly owned real estate. This issue is both material and disputed.

■ Similarly disputed is the material issue of Marc's interest in the various checks. Marc claims that it was Anthony's intention that at Anthony's death, Marc would have a 100% interest in the checks payable to Anthony and Marc, jointly. Yet, First Union

---

**10.** *See* § 8.3A–420, Official Comment 2 (noting that even when a check is delivered to a payee who has no actual interest in the check due to a separate arrangement, the requisite delivery to the co-payees has occurred).

**11.** Further, defendant's focus on the actual economic interest of the payees misconstrues the purpose behind the delivery requirement. Delivery is required to state an action for conversion under § 8.3A–420 because when delivery is not made to the payee, the underlying obligation owed by the payor to that payee is not affected. Providing a statutory cause of action for conversion is unnecessary where a payee's right to enforce the underlying obligation against the payor remains intact. Yet, because delivery of a negotiable instrument to a co-payee or agent discharges the payor's underlying obligation, it

follows that improper payment injures payees, and a claim for conversion properly arises as a remedy.

**12.** Plaintiff mistakenly relies on *Kenerson v. FDIC*, 44 F.3d 19, 35 (1st Cir.1995) in support of his contention that when delivery to a payee is "thwarted," the requisite delivery still exists provided the payor intended the delivery to occur. *Kenerson* does not stand for that proposition. Instead, *Kenerson*, decided before the addition of the explicit delivery requirement to the New Hampshire Code, holds that under then-existing New Hampshire law, delivery to a payee's agent is sufficient even though actual delivery to the payee was obstructed. Thus, *Kenerson* provides no support for finding delivery in the case of the check made payable solely to Marc.

claims that Anthony intended that Marc maintain only a 50% interest in the checks, with the remaining 50% passing to Anthony's estate. Accordingly, these issues are not suited for summary disposition, and remain to be tried by a jury.[13]

For the reasons here stated, an appropriate Order has issued.

---

13. These matters were tried before a jury on October 15, 1997. By answers to special interrogatories, the jury concluded that Marc had not authorized Leo to negotiate the checks and that Marc's claim as to his interest in the checks was correct. Accordingly, the Court entered judgment in favor of the plaintiff in the amount of $50,567.82.