Present: Hassell, C.J., Kinser and Lemons, JJ., and Carrico and Russell, S.JJ.

HALIFAX CORPORATION

                                    OPINION BY
v. Record No. 032444      SENIOR JUSTICE HARRY L. CARRICO
                                 November 5, 2004

WACHOVIA BANK

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Leslie M. Alden, Judge

### Introduction

In the period from August 1995 to February 1999, Mary K. Adams embezzled approximately $15.4 million while serving as comptroller for companies that are now known as Halifax Corporation (Halifax).[1]  Adams accomplished the embezzlement by writing more than 300 checks on Halifax's account with Signet Bank and its successor, First Union National Bank (collectively, First Union).  Adams used a stamp bearing the facsimile signature of Halifax's president and, in her own handwriting, made the checks payable to herself, to companies she had formed, or to cash.  She deposited the checks in several accounts she maintained with Central Fidelity Bank and its successor, Wachovia Bank (collectively, Wachovia), receiving cash from some of the checks.

---

[1] Halifax Corporation is a Virginia corporation and is successor-in-interest to a former wholly owned subsidiary, Halifax Technology Services Company, previously known as CMS Automation, Inc.  Hereinafter, we will refer to the three entities collectively as Halifax.

## Procedural Background

Upon discovery of the embezzlement, Halifax brought an action against First Union as the drawee bank and Wachovia as the depository bank.  (Halifax I.)  The trial court granted summary judgment in favor of First Union.  Halifax then took a nonsuit of the action against Wachovia and appealed to this Court from the order dismissing First Union.  We affirmed the dismissal, holding that Halifax's claim was barred pursuant to Code § 8.4-406(f), part of the Uniform Commercial Code (hereinafter, UCC), for Halifax's failure to notify First Union of the unauthorized signatures within one year after the bank's statement covering the checks in question was made available to Halifax.  Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 104, 546 S.E.2d 696, 704 (2001).

While the appeal to this Court was pending, Halifax filed in the court below a three-count motion for judgment asserting that Wachovia and First Union were liable to Halifax for the amounts embezzled by Adams.  (Halifax II.)  Count I alleged negligence, gross negligence, and bad faith on the part of Wachovia in violation of Code §§ 8.3A-404, -405, and -406.  Count II alleged common law conversion by Wachovia and First Union.  Count III alleged that Wachovia and First Union aided and abetted Adams' breach of fiduciary duty.

The trial court dismissed the claims against First Union on the ground of res judicata. This Court refused Halifax's petition for appeal from that dismissal. Halifax Corp. v. First Union Nat'l Bank, March 5, 2002 (Record No. 012582).

Wachovia moved for summary judgment on Halifax's claims against it. The trial court granted the motion, holding, contrary to Halifax's contention, that Code § 8.3A-406 does not create an affirmative cause of action, that Halifax's common law claim for conversion had been displaced by Code § 8.3A-420(a), and that Halifax had failed to allege sufficient facts to state a cause of action for aiding and abetting Adams' breach of fiduciary duty, assuming such an action exists. From the final order embodying these holdings and granting final judgment in favor of Wachovia, we awarded Halifax this appeal.

## Factual Background

Since the trial court disposed of the case by granting Wachovia's motion for summary judgment, we will adopt those inferences from the facts that are most favorable to Halifax, the nonmoving party, unless the inferences are strained, forced, or contrary to reason. Carson v. LeBlanc, 245 Va. 135, 139-40, 427 S.E.2d 189, 192 (1993). The facts as alleged in Halifax's motion for judgment show that Mary Adams, also known as Mary Collins, became comptroller at Halifax's

3

Richmond office in August 1995 and continued in that position until March 1999. She maintained four personal and two commercial accounts with Wachovia. One of the commercial accounts was styled "Collins Racing, Inc." and the other "Collins Ostrich Ranch."

When Adams first began embezzling money from Halifax in August 1995, she deposited in her personal accounts with Wachovia several checks each month for over $5,000.00. The amounts of the checks soon increased to between $10,000.00 and $15,000.00 each and before long to amounts ranging from $50,000.00 to $150,000.00 each, and deposits were made multiple times a day or week. For example, in July 1997, Adams deposited on July 9 a check for $95,550.00, on July 14, one check for $55,000.00 and another for $99,300.00, on July 16, a check for $93,500.00, on July 21, a check for $80,600.00, and, on July 30, a check for $149,305.00, totaling $573,255.00. In all, Adams drew 328 checks totaling $15,429,665.42 on Halifax's account with First Union.

Adams was "one of the best and largest individual customers" of Wachovia's branch where she did business. Managers and tellers saw Adams " 'a lot,' and she stood out because of her large checks and banking activity." The entire branch was curious about her "because of her large checks," the likes of which "none of the tellers had ever seen . . .

4

before."  Some tellers claimed "to have believed or assumed that Adams 'was at least part owner' of the corporate drawer."

Wachovia "repeatedly accepted such huge handwritten checks drawn on the account of Adams' employer despite the gross disparity with Adams payroll amount [of about $1,000.00 per pay period] shown on each teller and manager screen."  The tellers "had concerns about individual checks or the check activity, or both."  Bank officials knew Adams was Halifax's comptroller and understood that "such transactions by a financial officer, or even a part owner, present[ed] a serious potential for fraud."  Yet, branch "[m]anagers and supervisors told the tellers to do whatever Adams wanted."

## Discussion

### Negligence, Gross Negligence, and Bad Faith

Halifax contends that Code § 8.3A-406, when read in light of Code §§ 8.3A-404 and -405, gives rise to an affirmative cause of action for the negligence of a depositary bank with respect to the alteration of an instrument or the making of a forged signature.  These sections were part of the General Assembly's 1992 revision of the UCC.  1992 Acts Ch. 693.

It should be noted at this point, however, that the trial court stated in a footnote to its order granting Wachovia's motion for summary judgment that Halifax did "not contest Wachovia's motion as to Halifax's claims under Va. Code 8.3A-

5

404 and 405," and Halifax does not now press those claims. Hence, we will consider Code §§ 8.3A-404 and -405 only in the context of Halifax's argument that they are pertinent to the question whether Code § 8.3A-406 creates an affirmative cause of action for the negligence of a depositary bank under the circumstances of this case.

Code § 8.3A-406 provides as follows:

**Negligence, contributing to forged signature or alteration of instrument.** — (a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

(b) Under subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

(c) Under subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion.  Under subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.

Code § 8.3A-404(a) deals with an instrument issued to an impostor or to a person acting in concert with the impostor. Subsection (b) deals with an instrument whose payee is fictitious or not the person intended to have an interest in the instrument by the person determining to whom the

6

instrument is payable.  Both subsections provide that the indorsement of such an instrument by any person in the name of the payee is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

Code § 8.3A-405 deals with the situation where an employer entrusts an employee with responsibility with respect to an instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument.  For a person who, in good faith, pays an instrument or takes it for value or for collection, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person.

Both Code § 8.3A-404 and Code § 8.3A-405 contain an important provision.  In Code § 8.3A-404, the provision is expressed in this language:

> [I]f a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss <u>may recover from the person failing to exercise ordinary care</u> to the extent the failure to exercise ordinary care contributed to the loss.

(Emphasis added.)  The language of Code § 8.3A-405 is identical, except that the words "the fraud" are substituted

7

for the words "payment of the instrument" following the words "loss resulting from" in the foregoing quotation.

In support of its contention that Code § 8.3A-406 creates an affirmative cause of action, Halifax cites our decision in Gina Chin & Assoc., Inc. v. First Union Bank, 256 Va. 59, 500 S.E.2d 516 (1998). That case involved both forged signatures of the drawer and forged indorsements of the payee. The drawer sought recovery from the depository bank. The latter claimed it was liable under Code §§ 8.3A-404 and -405 only for forged indorsements and not where both the payee's indorsements and the drawer's signatures are forged.

We disagreed. We stated that the depository bank was erroneous in "its conclusion that §§ 8.3A-404 and -405 cannot be utilized by a drawer against the depository bank in a double forgery situation," 256 Va. at 61, 500 S.E.2d at 517, and that the drawer "was not precluded from asserting a cause of action against [the depository bank] pursuant to §§ 8.3 A-404 or -405." Id. at 63, 500 S.E.2d at 518.

Halifax quotes a passage from the Gina Chin opinion where we stated that the "concept of comparative negligence introduced in the revised sections reflects a determination that all participants in the process have a duty to exercise ordinary care . . . and that the failure to exercise that duty will result in liability to the person sustaining the loss."

8

Id. at 62, 500 S.E.2d at 517-18.  Halifax argues that Code § 8.3A-406 also creates a duty of care and, therefore, that "there exists [under Code § 3A-406] a right of action, as expressly recognized in Gina Chin."

It is plain, however, that the language quoted from Gina Chin has reference solely to Code §§ 8.3A-404 and -405. Indeed, the sentence immediately preceding the quotation states that "[t]he revisions to §§ 8.3A-404 and –405 changed the previous law by allowing 'the person bearing the loss' to seek recovery for a loss caused by the negligence of any person paying the instrument or taking it for value based on comparative negligence principles."  Gina Chin, 256 Va. at 62, 500 S.E.2d at 517.  Code § 8.3A-406 simply was not an issue in the case in any manner.  Gina Chin, therefore, does not serve as authority for Halifax's contention that Code § 8.3A-406 creates an affirmative cause of action.

Next, Halifax cites Official Comment 4 to Code § 8.3A-406, which reads as follows:

> Subsection (b) . . . adopts a concept of comparative negligence.  If the person precluded under subsection (a) proves that the person asserting the preclusion failed to exercise ordinary care and that failure substantially contributed to the loss, the loss may be allocated between the two parties on a comparative negligence basis.

Halifax then says "[l]eading commentators recognize that the concept of comparative negligence, duty, and loss

9

allocation provided in 3-406, like that in 3-404 and 3-405, creates a cause of action."  Halifax quotes 2 James J. White & Robert S. Summers, Uniform Commercial Code § 19-3 (4th ed. 1995) (hereinafter, White & Summers) to this effect:

> "3-406 and the accompanying sections carry with them something that did not exist under the old Code, namely, a new cause of action."  Id. at 247.  "This mechanism is an affirmative cause of action for negligence under 3-406(b)(and similar causes of action under 3-404, 3-405, and 3-406) under which the depositor-employer recovers a part of its loss by affirmative proof that the negligent behavior of the defendant bank caused a portion of it."  Id.  "3-406(b) gives an affirmative cause of action."  Id. at 248.  "[T]he 1990 changes in 3-406, and the analogous changes having to do with comparative negligence in the other sections . . . are likely to cause significant but subtle changes in the allocation of civil liability."  Id. at 253.

According to Halifax, another White & Summers quotation explains the "significance of the subtle language changes in revised § 8.3A-406":

> [The] allocation of liability based on comparative negligence is new, incorporated into the Code as part of the 1990 amendments to Article[s] 3 and 4.  Before the 1990 amendments, "preclusion" cases were standard contributory negligence cases.  A bank might first argue that the customer was negligent, and the customer would respond that the bank was contributorily negligent.  If both claims were proven, negligence would disappear from the case and the bank would be barred from asserting the customer's negligence.
>
> One consequence of adopting a comparative negligence standard is that there will have to be wider recognition of negligence as a basis not merely for defense (preclusion), but also as a basis for asserting an affirmative claim.  For example, in section 3-406(a), a depositor may be precluded from asserting alteration if the depositor's failure to exercise ordinary care

10

substantially contributed to the alteration.  Under 3-406(b), the "loss is allocated" between the two parties if the bank also failed to exercise ordinary care. Although it does not say so in terms, the "loss allocated" language in 3-406(b) <u>must be interpreted</u> to grant an affirmative cause of action to the depositor in our hypothetical case as a means of recovering for that part of the loss which the bank should bear.  As the statute is written, the bank's negligence no longer lifts the preclusion of 3-406(a), as it did before 1990. Rather, the bank's negligence gives other parties a cause of action to recover an appropriate share under 3-406(b). In that respect, the 1990 revisions state a subtle modification of the theories of recovery, and not merely a readjustment of the identity of those who bear losses.

White & Summers, § 19-1 at 239 (emphasis added) (footnotes omitted).[2]

The views of White & Summers, however, are just not compatible with Virginia law.  They say that Code § 3A-406(b) "must be interpreted" to create a cause of action.  § 19-1 at 239.  However, the rule in Virginia is that, unless the language of a legislative enactment is ambiguous, " 'there is no room for interpretation or construction; the plain meaning and intent of the [enactment] must be given it.' " <u>City of Emporia Bd. of Zoning Appeals v. Mangum</u>, 263 Va. 38, 41, 556 S.E.2d 779, 781 (2002) (quoting <u>Board of Zoning Appeals of the County of York v. 852 L.L.C.</u>, 257 Va. 485, 489, 514 S.E.2d 767, 769 (1999)).

---

[2] Halifax also cites 1 Henry J. Bailey & Richard B. Hagedorn, *Brady on Bank Checks* ¶ 1.27 at 1-81 (Rev. ed. 2004) for the proposition that "[t]he allocation-of-loss or comparative-negligence principle [contained in Code § 8.3A-406] is new to commercial law and introduces a tort concept."

" 'Language is ambiguous when it may be understood in more than one way, or simultaneously refers to two or more things.' " Supinger v. Stakes, 255 Va. 198, 205, 495 S.E.2d 813, 817 (1998) (quoting Lee-Warren v. School Bd. of Cumberland County, 241 Va. 442, 445, 403 S.E.2d 691, 692 (1991)). For Code § 8.3A-406 to be declared ambiguous, its language must lend itself to being understood in one way as creating a cause of action and in another way as not creating a cause of action. In our opinion, the statute cannot be understood as creating a cause of action for several reasons.

In the first place, the term "cause of action" or "may recover" or anything remotely resembling either term nowhere appears in Code § 8.3A-406. And this Court cannot supply the language that would have created an affirmative cause of action under the circumstances of this case. "[C]ourts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied. There can be no departure from the words used where the intention is clear." Supinger, 255 Va. at 206, 495 S.E.2d at 817 (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944)).

Second, Official Comment 1 to Code § 8.3A-406 states that subsection (a) "adopts the doctrine" that a "drawer who so negligently draws an instrument as to facilitate its material

12

alteration [or its forgery] is liable to a <u>drawee</u> who pays the altered [or forged] instrument in good faith." (Emphasis added.) But statutory language making a drawer liable to a drawee cannot possibly be taken as showing an intention to create a cause of action in favor of a drawer against a depositary bank.

Third, Official Comment 1 further states: "Section 3-406 does not make the negligent party liable in tort for damages resulting from the alteration. If the negligent party is estopped from asserting the alteration the person taking the instrument is fully protected because the taker can treat the instrument as having been issued in the altered form." We will assume Halifax is correct in saying the comment means "3-406 is not intended to make the negligent drawer subject to preclusion liable in tort." But Halifax is incorrect in saying "the comment shows the converse was intended, that 3-406 makes the bank liable in tort." This is not only a non sequitur but it is also contrary to the provision in the very next sentence of the Comment, which states that "the person taking the instrument is fully protected because the taker can treat the instrument as having been issued in the altered [or forged] form." It is difficult to imagine how something that is designed to protect the taker can logically be turned on

13

its head and used to create a cause of action against the taker.

Finally, and of overriding importance, we follow the rule in Virginia that "when the General Assembly includes specific language in one section of a statute, but omits that language from another section of the statute, we must presume that the exclusion of the language was intentional."  Halifax I, 262 Va. at 100, 546 S.E.2d at 702.  Strikingly absent from Code § 8.3A-406 is the specific language contained in Code §§ 8.3A-404 and –405 that "the person bearing the loss may recover from the person failing to exercise ordinary care."  The General Assembly knows how to create a cause of action when that is its intention, and the omission of the "may recover" or similar language from Code § 8.3A-406 represents an unambiguous manifestation of a contrary intention.

Halifax cites several out-of-state decisions in support of its contention that "revised 3-406 provides a cause of action, in favor of a drawer against a depositary bank." Cited are National Union Fire Ins. Co. v. Hibernia Nat'l Bank, 258 F.Supp.2d 490 (W.D. La. 2003); National Union Fire Ins. Co. v. Allfirst Bank, 282 F.Supp.2d 339 (D. Md. 2003); Delta Textiles New York, Ltd. v. Diaz, Docket No. BER-L-10648-01 (N.J. Super. Ct. Oct. 24, 2003); Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Sun Nat'l Bank, Docket No. MER-L-2894-03 (N.J. Super.

14

Ct. April 2, 2004); Atlantic Mutual Ins. Co. v. The Provident Bank, 669 N.E.2d 901 (Oh. Mun. Ct. 1996). These are all trial court decisions; we find them unpersuasive.[3]

One appellate decision cited by Halifax, Micro Experts, Inc. v. Edison Tech., Inc., 701 N.E.2d 1033 (Oh. Ct. App. 1997), involved an Ohio statute that is the equivalent of our Code § 8.3A-406. The court stated that "[o]rdinarily this statute is used as a defense, rather than in support of a claim." Id. at 1039.[4] But, the court continued, "[a]ssuming arguendo that the statute may be raised" by the drawer of the checks involved, the drawer still lost because it did not "demonstrate that [the bank] failed to exercise ordinary care." Id. Halifax can take little comfort from this decision.

Nor can Halifax find comfort in another appellate court case it cites. In Wachovia Bank, N.A. v. Fed. Reserve Bank of Richmond, 338 F. 3rd 318 (4th Cir. 2003), the court stated: "U.C.C. § 8.3-406 . . . provides for a defense but does not expressly create a cause of action. To the extent that such a

---

[3] Delta Textiles and Sun Nat'l Bank are especially unpersuasive. Both cases are still pending in the trial courts where they were brought and both involve only pretrial orders which may be subject to reversal upon reconsideration by those courts or upon appeal. So, for the time being at least, the two cases are of doubtful precedential value.

[4] The court cited Fifth Third Bank of Toledo, N.A. v. Dziersk, 12 F.3d 600 (6th Cir. 1993), as authority for the quoted statement.

15

cause of action is cognizable, which we do not hold, we conclude that summary judgment in favor of [the drawer] was properly granted [because it was not shown] that the asserted negligence of the [drawer] substantially contributed to the alteration of the check." Id. at 325.

Finally, Halifax cites a work of another of its "leading commentators," where it is stated that "[the] preclusion provision [of Code § 8.3A-406] seems to be purely defensive in nature, although conceivably [it] could constitute grounds for affirmative action." 2A Frederick M. Hart & William F. Willier, Negotiable Instruments Under the Uniform Commercial Code § 12.37 at 12-234 (2001). (Emphasis added.)[5] This hardly provides support for Halifax's claim that Code § 8.3A-406 creates an affirmative cause of action for the negligence of a depositary bank.

We conclude that the trial court did not err in its holding that Code § 8.3A-406 does not create an affirmative cause of action and in awarding summary judgment to Wachovia with respect to that claim.

Common Law Conversion[6]

---

[5] This quotation also appears in White Sands Forest Prods., Inc. v. First National Bank of Alamogordo, 50 P.3d 202, 206 (N.M. App. 2002), where the court held that UCC § 3-406 does not create an affirmative cause of action.

[6] Count II of Halifax's motion for judgment is labeled as a claim for "COMMON LAW CONVERSION" and Count III is labeled

16

Code § 8.3A-420(a) provides as follows:

> (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. <u>An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument</u> or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

(Emphasis added.)

The term "instrument" means a negotiable instrument and includes a check. Code § 8.3A-104(b) and (f). The term "issuer" means a maker or drawer of an instrument. Code § 8.3A-105(c). The term "drawer" means a person who signs or is identified in a draft as a person ordering payment. Code § 8.3A-103(3).

Under these statutory definitions and the facts as alleged in Halifax's motion for judgment, Halifax was the issuer of the checks in question. It would appear, therefore,

---

as a claim for "AIDING AND ABETTING BREACH OF FIDUCIARY DUTY." Halifax now employs the unfamiliar label on its claim for conversion as a "COMMON LAW CLAIM FOR CONVERSION FACILITATING A BREACH OF FIDUCIARY DUTY" and otherwise intermingles its argument on its claim for conversion with its argument on its claim for aiding and abetting a breach of fiduciary duty. These are separate claims, and we will treat them as such. The claim for aiding and abetting will be discussed <u>infra</u>.

17

that Code § 8.3A-420(a)(i) would bar Halifax's claim for conversion.

Halifax contends, however, that Code § 8.3A-420 does not displace a common law claim for conversion. In support of this contention, Halifax cites Stefano v. First Union Nat'l Bank of Virginia, 981 F.Supp. 417 (E.D. Va. 1997), where it is stated:

> Analysis properly begins with the terms of Virginia Code § 8.1-103,[7] which sets the standard for Code displacement of the common law. This section provides that "unless displaced by the particular provisions of [the UCC], the principles of law and equity, including the law merchant . . . supplement its provisions." The teaching of this section is plain: The common law action for conversion is displaced by the Code only in circumstances where Virginia Code § 8.3A-420 applies. In other circumstances, common law conversion survives.

Id. at 420. Halifax then says that the drawer preclusion contained in Code § 8.3A-420(a)(i) applies only to statutory conversion and not to common law conversion.

We agree with the Stefano court's "standard for Code displacement of the common law," but we disagree with

---

[7] Code § 8.1-103 provides that "[u]nless displaced by the particular provisions of [the UCC], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating clause shall supplement its provisions." Although this statute was repealed in July of 2003, its successor, Code § 8.1A-103(b), features language virtually identical to that just quoted here.

18

Halifax's assertion that the drawer preclusion of Code § 8.3A-420(a)(i) applies only to an action for statutory conversion.

In the first place, the language of Code § 8.3A-420(a)(i) is unambiguous.  In clear and unmistakable terms, in keeping with Code § 8.1-103 and its successor, Code § 8.1A-103, it specifically precludes a drawer of a check from bringing an "action for conversion," and there is no language in Code § 8.3A-420 that can possibly be read as limiting the preclusion to an action for statutory conversion.

Furthermore, contrary to what Halifax would like us to believe, Stefano does not support its position.  The plaintiff there, unlike Halifax here, was a co-payee of instruments that were accepted by the bank without the plaintiff's endorsement and were deposited into an account in the sole name of the other payee.  The plaintiff asserted two claims against the bank for conversion, one under Code § 8.3A-420 and another under the common law.  While the court made the statement quoted above concerning the standard to be applied "for Code displacement of the common law," it actually held that the plaintiff's common law claim for conversion was displaced by the provision in the second sentence of Code § 8.3A-420 allowing "an action for conversion where a 'bank makes or obtains payment with respect to a negotiable instrument for a person not entitled to enforce the instrument.' "  Id. at 420.

19

The court made this statement, which is equally applicable

here:

> Plaintiff's reliance on the first sentence of § 8.3A-420,
> which states that "the law applicable to conversion of
> personal property applies to instruments," is misplaced.
> This sentence merely states the general rule that where a
> claim for conversion of a negotiable instrument is not
> specifically covered by § 8.3A-420, then the claim will
> be governed by the common law of conversion as it applies
> generally to personal property.  See Virginia Code § 8.1-
> 103.  It does not disrupt, as plaintiff suggests, the
> Code's stated design that particular provisions of the
> act may displace a cause of action under the common law.
> See Id.  In sum, then, § 8.3A-420 is plaintiff's sole
> conversion remedy.

Stefano, 981 F. Supp. at 421.

Once again, Halifax relies upon White & Summers to

support its argument that its claim for conversion has not

been displaced by Code 8.3A-420.  Citing and quoting in part

from White & Summers, Halifax states that "this could not be a

clearer case where common law 'make[s] one guilty of

conversion for dealing with an instrument in ways not

described by the statutory definition (second sentence)' and

of 'liability under the common law introduced into Article 3

by the first sentence of 3-420.'  2 White & Summers § 18-4 at

216."

But the full quotation from White & Summers indicates

that the case is not as clear as Halifax would like.  The full

quotation is as follows:

20

Section 3-420's opening sentence incorporates common law conversion: "The law applicable to conversion of personal property applies to instruments." It is conceivable, therefore, that the law of Minnesota or New York or Florida might make one guilty of conversion for dealing with an instrument in ways not described by the statutory definition (second sentence). When that is so, there will be liability under the common law introduced into Article 3 by the first sentence of 3-420.

Id. (emphasis added). We need not speculate about what might conceivably be the result if an instrument is dealt with in some unidentified way not described by the statutory definition. We know for certain what the result must be when an instrument with a forged signature is the subject of a claim for conversion brought by the issuer thereof. The result is the dismissal of the claim. "An action for conversion of an instrument may not be brought by . . . the issuer . . . of the instrument." Code § 8.3A-420(a)(i).

Halifax argues, however, that "as clearly explained in the comments to the revised Code, [the] preclusion is intended only to extend to claims for statutory conversion, namely those involving forged indorsements." Halifax then quotes Official Comment 1 to Code § 8.3A-420, as follows:

Under former Article 3, the cases were divided on the issue of whether the drawer of a check with a forged indorsement can assert rights against a depositary bank that took the check. The last sentence of Section 3-420(a) resolves the conflict by following the rule stated

21

in Stone & Webster Engineering Corp. v. First National Bank & Trust Co., 184 N.E.2d 358 (Mass. 1962).[8]

But this does not say that the preclusion in the last sentence of Code § 8.3A-420(a) extends only to claims involving forged indorsements.  Nor does Code § 8.3A-420 itself contain any such limiting language.  The statute clearly precludes a drawer from bringing an action for conversion of "an instrument," and it does not differentiate between an instrument with a forged signature and one with a forged indorsement.  As noted in White & Summers, Code § 8.3A-420 "denies the drawer a conversion cause of action where the drawer's signature has been forged."  White & Summers, § 19-5 at 274.

We conclude that the trial court did not err in its holding that Halifax does not have a claim for conversion and in awarding summary judgment to Wachovia with respect to that claim.[9]

### Aiding and Abetting Breach of Fiduciary Duty

---

[8] Stone & Webster involved checks with forged indorsements.  The Supreme Judicial Court of Massachusetts held that the drawer of the checks had no "right of action" against the depository bank, 184 N.E.2d at 362, because the drawer "had no valuable rights in them," id.

[9] The views we have expressed with respect to the claim for conversion make it unnecessary to consider the trial court's alternate holding that Halifax had no claim for conversion because "such a claim lies only where personal property . . . is converted," and a "check represents an obligation of the drawer rather than property of the drawer."

With respect to this claim, the trial court assumed, "arguendo, that Virginia recognizes a cause of action for aiding and abetting a breach of fiduciary duty." The trial court concluded, however, that Halifax had "failed to allege sufficient facts to state such a claim." We will make the same assumption and reach the same conclusion.

The dispute between the parties centers upon what Halifax needed to allege in its motion for judgment concerning (1) Wachovia's knowledge of Adams' breach of fiduciary duty, and (2) Wachovia's participation in that breach. We will discuss these matters seriatim.

### Wachovia's Knowledge

Halifax says that Code § 8.3A-307(b)(3) "expressly defines the meaning of 'notice' and 'knowledge' for purposes of bank liability under the common law," and that, in its motion for judgment, it made the necessary allegations. This Code section provides that "[i]f an instrument is issued by the represented person or the fiduciary as such, and made payable to the fiduciary personally, the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty." (Emphasis added.)[10] In this

---

[10] Halifax also cites Code § 8.3A-307(b)(2) and (4) which, as Wachovia points out, "on their face, do not apply to the checks at issue here."

23

scenario, Halifax is "the represented party," Adams is "the fiduciary," and Wachovia is "the taker."

All Halifax alleged, however, was that Wachovia had "actual knowledge of Adams' fiduciary duty and actual . . . notice [of] Adam's [sic] breach of duty." While this may be sufficient to allege Wachovia's actual knowledge of Adams' fiduciary duty, it is not sufficient to allege that Wachovia "[knew] of the breach of fiduciary duty," in the words of Code § 8.3A-307(b)(3). Alleging actual knowledge of a fiduciary duty is not tantamount to alleging actual knowledge of a breach of the duty. "Notice which does not amount to knowledge is not enough to cause Section 3-307 to apply." Official Comment 2 to Code § 8.3A-307. "A person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it. 'Discover' or 'learn' or a word or phrase of similar import refers to knowledge rather than to reason to know." Code § 8.1-201(25).[11]

Yet again, Halifax relies on White & Summers, this time for the proposition that Code § 8.3A-307(b)(3) is violated where "the person who received payment was known to be a

_____

[11] Code § 8.1-201 was repealed effective July 1, 2003, and was replaced by Code § 8.1A-202. Subsection (b) of the new version states: " 'Knowledge' means actual knowledge. 'Knows' has a corresponding meaning." New subsection (c) states: " 'Discover,' or 'learn,' or words of similar import refer to knowledge rather than to reason to know."

24

fiduciary by the taker . . . [and] the taker made the money available to the fiduciary personally by putting it in his or her account or otherwise in a transaction known to be for the embezzler's personal use." White & Summers, § 19-5 at 276. But, here again, Halifax does not tell the whole story.

The statement quoted from White & Summers has reference to a hypothetical case where "the embezzler, with authority to draw, draws a check payable to the order of the corporation, forges the corporate indorsement (he or she has no authority to indorse) and passes the check to a depository bank." Id. at 275-76. But the checks here were not payable to Halifax and they bore no forged indorsements, so the statement quoted from White & Summers is inapposite. Furthermore, White & Summers did not say that the hypothetical represented a violation of Code § 8.3A-307(b)(3) as, indeed, they could not – the hypothetical checks were not covered by that section but by Code § 8:3A–307(b)(2); White & Summers merely said that "the owner of the account might strengthen this case by noting that he or she had carried the substantial burden by proving the conditions required under 3-307(b)." § 19-5 at 276. And, in the end, White & Summers say: "[W]e are uneasy about all of this." Id.

Finally, Wachovia states on brief that Halifax "did not and could not allege that Wachovia had actual knowledge of the

25

most relevant fact, i.e., that Adams did not have Halifax's authority to draw the checks to herself (or to her companies or to cash)." When asked during oral argument whether Halifax "alleged that," counsel for Halifax responded by saying: "We alleged [it] in the entire body of the long motion for judgment, we did not use, we concede, the two words actual knowledge with respect to . . . the second element, actual knowledge of the breach."

<u>Wachovia's Participation</u>

As the trial court noted in its final order, a plaintiff asserting a claim for breach of fiduciary duty is required to allege "more than mere knowledge that the breach of fiduciary duty has occurred." The Court stated that "[f]or a claim to survive, the plaintiff must assert that the defendant somehow recruited, enticed, or participated in the fiduciary's breach of its duty," yet Halifax had not alleged that Wachovia "recruited, enticed, encouraged, or benefited from Adams' breach of fiduciary duty."

Halifax says that it alleged in its motion for judgment that Wachovia "'participated' in the breach of fiduciary duty," and that this was sufficient to withstand Wachovia's motion for summary judgment. Halifax states that no allegation of "affirmative, conspiratorial aid is required."

26

Halifax cites Tysons Toyota, Inc. v. Globe Life Ins. Co., 1994 U.S. App. LEXIS 36692 (4th Cir. Dec. 29, 1994) (per curiam), which involved a corporate officer's diversion from the plaintiff corporation to the defendant insurance companies of a business opportunity belonging to the plaintiff. The plaintiff claimed that the defendants "recruited and enticed [the corporate officer] to breach his fiduciary duty to [the corporation]" and alleged facts supporting that claim. Id. at *4. The court held that the plaintiff had "alleged sufficient participation by the defendants in [the corporate officer's] breach of fiduciary duty." Id. at *13. But Halifax made no allegation here that Wachovia recruited and enticed Adams to breach her fiduciary duty, and it alleged no facts that would have supported the allegation had it been made.

Halifax also cites Patteson v. Horsley, 70 Va. (29 Gratt.) 263 (1877). There, a trustee, John Horsley, sold bonds for $9,000.00 he held in trust to G. A. Hancock, for which Hancock gave his bond for $8,280.00. When that bond fell due in 1863, Hancock proposed to pay the bond in Confederate money, and Horsley accepted payment in that currency. Upon a bill of complaint praying for the settlement of the accounts of Horsley, as trustee, the trial court ruled that neither Horsley nor Hancock was liable for any loss that had resulted to the trust fund. On appeal, this Court

27

reversed, holding that the transaction between Horsley and Hancock was a breach of trust by the former in which the latter had participated, "the same having been committed at [Hancock's] instance and for his benefit." Id. at 270. Nothing in Halifax's motion for judgment even comes close to an allegation that Adams' breach of fiduciary duty was committed at Wachovia's instance or for its benefit.

Next, Halifax cites W. L. Chase & Co. v. Norfolk Nat'l Bank of Commerce & Trusts, 151 Va. 1040, 145 S.E. 725 (1928). There, Chase had an account with the Norfolk National Bank and another with a bank in Rocky Mount, North Carolina. An employee of Chase, J. C. Custis, without authority, drew a check on the Rocky Mount bank payable to the Norfolk Bank. That bank allowed the check, endorsed by Custis, to be deposited in his personal account, which Custis then used to pay off a debt he owed the Norfolk Bank. Chase brought an action in assumpsit, not aiding and abetting, against the Norfolk bank and was allowed to recover the amount of the check. This Court held that by complying with the employee's request to place the proceeds of the check in his personal account, the Norfolk Bank "manifestly allowed him to exceed his authority and so participated in the diversion of funds under [its] control." Id. at 1057, 145 S.E. at 730. The dissimilarity between the present case and Chase is at once

28

obvious.  Here, Halifax was not Wachovia's customer, the checks in question were not made payable to Wachovia, and the proceeds from the checks were not used to pay an indebtedness due Wachovia.[12]

Halifax also cites CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 431 S.E.2d 277 (1993).  One of the claims asserted in the case was for tortious interference with contracts.  We said that one of the elements of such a claim is "intentional interference inducing or causing a breach or termination of the relationship or expectancy," and we held that the plaintiff had alleged the element of intentional interference with sufficient specificity.  Id. at 28, 431 S.E.2d at 281 (emphasis added).  It is surprising that Halifax cites this case.  It certainly does not support Halifax's argument, noted supra, that it was not required to allege "affirmative . . . aid" as an element of its claim for aiding and abetting.

This brings us to the crux of the issue whether Halifax's allegation that Wachovia "participated" in Adams' bank

---

[12] Halifax cites several cases similar to Chase.  All are inapposite.  Jones v. United States Fid. & Guar. Co., 165 Va. 349, 182 S.E. 560 (1935); Trust Co. of Norfolk v. Snyder, 152 Va. 572, 147 S.E. 234 (1929); Bank of Giles County v. Fidelity & Dep. Co. of Md., 84 F.2d 321 (4th Cir. 1936); Fidelity & Dep. Co. of Md. v. Bank of Smithfield, 11 F.Supp. 904 (E.D. Va. 1932); Scottsbluff Nat'l Bank v. Blue J Feeds, Inc., 54 N.W.2d 392 (Neb. 1952); Wichita Royalty Co. v. City Nat'l Bank of Wichita Falls, 89 S.W.2d 394 (Tex. 1935).

29

transactions is sufficient to state a claim of aiding and abetting. Generally speaking, the word "participate," standing alone, is of a neutral and innocuous nature, importing no wrongdoing of any kind. See Black's Law Dictionary 1141 (7th ed. 1999). However, its meaning can vary depending upon the context in which it is used. On the other hand, the term "aiding and abetting" invariably imports purposeful conduct. Id. at 69 ("aid given with mens rea is abetment"). When the word "participate" is used in the phrase, "participate in aiding and abetting," it sheds its neutral and innocuous nature and takes on the characteristic of affirmative participation inherent in the other words of the phrase. The maxim *noscitur a sociis* "instructs that 'the meaning of a word takes color and expression from the purport of the entire phrase of which it is a part, and it must be read in harmony with its context.' " Andrews v. American Health & Life Ins. Co., 236 Va. 221, 225, 372 S.E.2d 399, 401 (1988) (quoting Turner v. Commonwealth, 226 Va. 456, 460, 309 S.E.2d 337, 339 (1983).

A bank participates in numerous transactions every day involving the acceptance and deposit of checks. Yet, unless it actually knows a breach of fiduciary duty is occurring and participates with mens rea in the consummation of the breach,

it should not be held liable for aiding and abetting the breach.

Halifax's motion for judgment neither alleges affirmative participation by Wachovia nor states facts that would support such an allegation. Rather, Halifax's allegations are negative in nature, listing all the things Wachovia did not do that might have uncovered the embezzlement. This is insufficient to overcome the lack of allegations of affirmative participation on the part of Wachovia.

## Leave to Amend

Halifax states on brief that "[in] the event that the circuit court found [Halifax's] allegations were not pled with sufficient particularity, Halifax was entitled to leave to amend." However, Halifax has a problem; it has not assigned error to the denial of leave to amend, and we will not notice the denial now. Rule 5:17(c) ("[o]nly errors assigned in the petition for appeal will be noticed by this Court").

## Conclusion

Finding no error in the holdings of the trial court, we will affirm its judgment.

Affirmed.