PRESENT: Hassell, C.J., Lacy, Keenan, Kinser, Lemons and Agee,
JJ., and Stephenson, S.J.

MARYBELLE M. AUER, ADMINISTRATRIX
 OF THE ESTATE OF NICHOLAS AUER, DECEASED
                                        OPINION BY
v.  Record No. 042226    SENIOR JUSTICE ROSCOE B.STEPHENSON, JR.
                                        June 9, 2005
EDWARD MILLER, M.D., ET AL.

              FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    John C. Morrison, Jr., Judge

     The primary issue in this appeal, one of first impression

regarding the interpretation of Code § 8.01-581.18, is whether

the trial court erred in granting immunity to a physician

pursuant to said Code section.  A second issue is whether the

trial court erred in vacating a verdict against the physician's

practice group.

                                 I

     Marybelle M. Auer (the Plaintiff), as Administratrix of the

Estate of Nicholas Auer (Auer), filed this wrongful death action

against Lenox Baker, M.D., Mid-Atlantic Cardiothoracic Surgeons,

Ltd. (Mid-Atlantic), Edward Miller, M.D., and Cardiovascular

Associates, Ltd. (Cardiovascular Associates).  The Plaintiff

alleged that the "Defendants' joint and several duty to exercise

the proper degree of care [for Auer] was breached" and that such

"negligence proximately caused [Auer's] untimely death."

     Dr. Miller and Cardiovascular Associates filed a Special

Plea of Immunity, which the trial court granted in part and

denied in part. The court ruled that Dr. Miller and Cardiovascular Associates were immune pursuant to Code § 8.01-581.18(B) for any action or inaction relating to laboratory tests ordered by Dr. Baker during Auer's May 15-23, 2002 hospital admission. The court denied the special plea as to the allegations of negligence for failure to treat Auer following his May 23 discharge from the hospital.

The case was tried by a jury, and verdicts were returned in favor of Dr. Miller, against Dr. Baker and Mid-Atlantic in the amount of $400,000 each, and against Cardiovascular Associates in the amount of $200,000. Cardiovascular Associates moved to have the verdict against it set aside, and the trial court granted the motion, concluding that "there was insufficient evidence upon which to submit the issue of proximate cause . . . to the jury."[1]

We awarded the Plaintiff this appeal in order to consider her assignments of error, which state the following:

 I. The trial court erred in granting Miller [i]mmunity under § 8.01-581.18(A) and (B).

   A. The trial court erred when, by virtue of granting immunity, Defendants' joint and several liability was judicially redacted

   B. The trial court erred when, in conformity with the immunity ruling, [i]t granted jury

_____

[1] The verdicts against Dr. Baker and Mid-Atlantic are not at issue in this appeal.

instructions temporally segregating Defendants'
liability

II. The trial court erred when it vacated the verdict against the cardiology [g]roup.

II

On May 15, 2002, Auer was admitted to Sentara Norfolk General Hospital (the Hospital) by Dr. Baker, a cardiovascular surgeon. Dr. Miller was Auer's cardiologist. On that date, Dr. Baker removed Auer's native aortic valve and replaced it with a prosthetic valve. Dr. Baker also ordered a culture and sensitivity test (C&S) of Auer's native valve.

The C&S indicated that Auer's native valve was positive for staphylococcus. Dr. Baker, however, did not review the report of the test, which had been posted to Auer's chart. Dr. Miller, who had seen Auer several times in the hospital, also did not review the report. Subsequently, the prosthetic valve became infected, and the infection remained untreated while Auer was a patient in the Hospital.

Auer was discharged from the Hospital on May 23, 2002. Both Dr. Miller and Dr. Baker prepared discharge summaries.

On May 30, 2002, the Plaintiff, who was concerned about Auer's condition, made several telephone calls to Dr. Miller's practice group, Cardiovascular Associates. According to the Plaintiff, someone at Cardiovascular Associates advised her to contact Dr. Baker for post-operative complaints. The Plaintiff

3

had also placed several calls to Mid-Atlantic between May 23 and May 29, 2002.

Auer was readmitted to the Hospital on June 3, 2002, and was subsequently diagnosed with endocarditis, an infection of the inner lining of the heart.  He died shortly thereafter.

### III

We first consider whether the trial court erred in granting immunity to Dr. Miller pursuant to Code § 8.01-581.18(B).[2]  That Code section provides, in pertinent part, as follows:

> Any physician shall be immune from civil liability for any failure to review, or to take any action in response to the receipt of, any report of the results of any laboratory test or other examination of the physical or mental condition of any person, which test or examination such physician neither requested nor authorized in writing, unless such report is provided directly to the physician by the person so examined or tested with a request for consultation.

It is firmly established that, when language of a statute is plain and unambiguous and its meaning is clear and definite, a court is bound by that language.  Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001).  A court is not permitted to alter or rewrite a statute; this is strictly a legislative function.  Halifax Corporation v. Wachovia Bank, 268 Va. 641, 653, 604 S.E.2d 403, 408 (2004).  Whether a statute is wise is

---

[2] Dr. Miller relies only upon subsection B of Code § 8.01-581.18 and concedes that subsection A is inapplicable.

4

also a matter for the legislature and not for a court.  Horner v. Dept. of Mental Health, 268 Va. 187, 193, 597 S.E.2d 202, 205 (2004).

We find the language in subsection B of Code § 8.01-581.18 to be clear and unambiguous.  It clearly provides that a physician shall be immune from civil liability for any failure to take any action in response to a laboratory test or other examination that the physician did not request or authorize unless the person tested or examined provides a copy of the report of the results and requests a consultation.

The Plaintiff contends, however, that Code § 8.01-581.18 applies only to tests ordered or authorized in outpatient situations and "was simply not intended to exonerate an *attending* physician from reading a lab report."  We do not agree.

The statute's application is not limited to outpatient situations.  Indeed, the statute specifically applies to "any report . . . of any person."  Had the General Assembly intended to limit the statute's application to outpatient situations, it could have so stated.  Likewise, had the General Assembly intended to exclude either an attending physician or a treating physician from the statute's application, it could have said so.[3]

_____

[3] We need not decide whether Dr. Miller was also an "attending physician," as alleged by the Plaintiff, although the

5

This Court cannot amend or rewrite the statute. Halifax Corporation, 268 Va. at 653, 604 S.E.2d at 408.

In the present case, Code § 8.01-581.18(B) clearly applies to Dr. Miller. He "neither requested nor authorized" the C&S, and the report of the test was not provided to him with a request for consultation. Therefore, the trial court did not err in granting immunity to Dr. Miller.

The Plaintiff further contends that the trial court erred in prohibiting the jury from considering Dr. Miller's alleged negligence regarding his failure to review the test results. She asserts that Dr. Miller and Dr. Baker were concurrently negligent and, therefore, should share joint and several liability. We disagree.

Having correctly determined that Dr. Miller was immune from liability regarding review of the test report, the trial court necessarily rejected the Plaintiff's contention that the two doctors were jointly and severally liable. At trial, the sole issue with respect to Dr. Miller and Cardiovascular Associates was whether they failed to appropriately respond to the

record clearly indicates that Dr. Baker was the attending physician.

6

Plaintiff's telephone calls on May 30, 2002, regarding Auer's condition.[4]

IV

Finally, we determine whether the trial court erred in vacating the verdict against Cardiovascular Associates. The trial court concluded that the Plaintiff presented sufficient evidence from which the jury could reasonably find that Cardiovascular Associates breached the applicable standard of care by not providing the proper response to the Plaintiff's telephone calls on May 30, 2002. However, the court further concluded, as a matter of law, that this breach of the standard of care was not a proximate cause of Auer's death.

Ordinarily, negligence and proximate cause are issues to be resolved by a jury. When reasonable minds could not differ about these issues, a court may properly decide them. Hadeed v. Medic-24, Ltd., 237 Va. 277, 285, 377 S.E.2d 589, 593 (1989).

In a case involving the death of a patient, a physician's negligence is a proximate cause of the patient's death if it "destroyed any substantial possibility of the patient's survival." Brown v. Koulizakis, 229 Va. 524, 532, 331 S.E.2d 440, 446 (1985). In the present case, the trial court

---

[4] For the same reason, the trial court did not err in granting jury instructions and verdict forms that temporally segregated the defendants' liability.

meticulously reviewed the testimony of the Plaintiff's expert witnesses before concluding that no evidence was presented from which the jury could find that Cardiovascular Associates' negligence was a proximate cause of Auer's death.

One of the Plaintiff's experts, Dr. Donald E. Craven, testified that by June 3, 2002, the date that Auer was readmitted to the Hospital, any plan of treatment would have been too late to save Auer. Dr. Craven was unable to say to a reasonable degree of medical certainty that the outcome would have been different had Auer been treated for endocarditis on May 30.

Dr. Richard P. Friedlander, another of the Plaintiff's experts, testified that he could not "say with certainty that identification and treatment on the 30th [of May] would have prevented [Auer's] death." Dr. Friedlander could only say that earlier intervention "certainly would have improved his chances of surviving as compared to making the diagnosis on the 3rd [of June]." Dr. Friedlander also testified that

> had the diagnosis and treatment been offered before discharge on the 23rd, it is much more likely than not that the patient would have survived. I can also say that by the time the patient was readmitted to the hospital on the 3rd, his fate was essentially sealed as of that time.
>
> Between the discharge on the 23rd and the readmission on the 3rd, with each successive day the likelihood of his survival diminished, but I cannot tell you at what point he tripped over that magic 51 percent line when

8

it is more likely than not that he would have survived or would not have survived.

Finally, Dr. Robert Bojar, also an expert for the Plaintiff, testified that Auer would have survived had he received treatment "earlier rather than later," but that by June 3, "it was too late." Dr. Bojar did not say, however, that had Auer been seen and treated on May 30th, he would more likely than not have survived.

After reviewing the testimony of the Plaintiff's expert witnesses, the trial court concluded that "the combined testimony of these witnesses does not establish that, had [Cardiovascular Associates] responded appropriately according to the standard of care, . . . [Auer] would have had a substantially better possibility of survival." The trial court further stated that the Plaintiff "must be able to present expert testimony to support the proposition that [Auer] had at least a substantial possibility of survival on May 30 . . . , and was deprived of same by the negligence of Cardiovascular Associates. There was no adequate testimony to meet this burden." We agree with the trial court's conclusion and hold that the trial court did not err in vacating the verdict against Cardiovascular Associates.

V

For the reasons stated, we find no error in the trial court's rulings.  Accordingly, the trial court's judgment will be affirmed.

<u>Affirmed</u>.