Present:  Carrico, C.J., Hassell, Keenan, Kinser, and Lemons,
JJ., Poff and Stephenson, S.JJ.

HALIFAX CORPORATION

OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 001944          June 8, 2001

FIRST UNION NATIONAL BANK

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
M. Langhorne Keith, Judge

I.

The primary issue that we consider in this appeal is
whether a plaintiff's cause of action against a bank is
precluded by Code § 8.4-406(f), which is a part of Virginia's
Uniform Commercial Code.

II.

Halifax Corporation filed its motion for judgment against
First Union National Bank and Wachovia Bank, N.A.  In Count I
of a multi-count motion for judgment, Halifax sought recovery
from First Union under Code § 8.4-401, which is a part of
Virginia's Uniform Commercial Code.  In Count II, Halifax
sought damages based upon First Union's alleged breach of its
deposit agreement with Halifax.  In Count III, Halifax sought
to recover against First Union and Wachovia Bank for purported
claims of negligence, gross negligence, and recklessness under
Code §§ 8.3A-404, 8.3A-405, 8.3A-406, and 8.4-406, which are
parts of Virginia's Uniform Commercial Code.

First Union filed a motion for summary judgment alleging, among other things, that Halifax's claims were barred under Code § 8.4-406(f). The circuit court, in a written opinion, agreed with First Union and entered an order which granted the motion for summary judgment. Halifax nonsuited Wachovia Bank and appeals the circuit court's judgment in favor of First Union.

III.

Because this case was decided on a motion for summary judgment, we will state the facts pled in the plaintiff's motion for judgment and adopt inferences from those facts in the light most favorable to Halifax Corporation, the non-moving party, unless the inferences are strained, forced, or contrary to reason. Slone v. General Motors Corp., 249 Va. 520, 522, 457 S.E.2d 51, 52 (1995).

Halifax is a corporation organized and existing under the laws of Virginia. Between August 1995 and March 1999, Mary K. Adams served as Halifax's comptroller.[1] Between August 1995 and January 1997, she wrote at least 88 checks on Halifax's account at Signet Bank, which was subsequently acquired by

---

[1] Halifax Corporation, is the successor in interest to CMS Automation, Inc., and Halifax Technology Services Company. Adams was employed as the comptroller for these companies. For purposes of this appeal, we will refer to CMS Automation, Halifax Technology Services, and Halifax Corporation as Halifax.

First Union National Bank. Adams used facsimile signatures on the checks, and she made the checks payable to herself or cash. Adams deposited these checks in her personal account at the former Central Fidelity Bank, which is now Wachovia Bank, N.A. First Union, as drawee bank, "paid each of these checks and debited [Halifax's] account despite the forged and/or unauthorized drawer's signatures."

First Union paid each check and debited Halifax's account even though most of these corporate checks "were drawn in large amounts exceeding $10,000 and $20,000, of which approximately one quarter were drawn in exceptionally large amounts of between $50,000 and $100,000 each, and payable to 'Mary Adams,' an individual who [First Union] knew to be an employee and Comptroller of [Halifax]." First Union paid these large checks "despite one, and in many instances, two levels of inspection of the individual checks for purposes of payment approval."

In January 1999, Halifax discovered accounting irregularities in certain check transactions and initiated an investigation. Subsequently, Halifax learned that Adams had embezzled at least $15,445,230.49 from its account. Halifax does not dispute that First Union sent Halifax monthly statements reflecting the unauthorized checks and that Halifax

failed to notify First Union of the unauthorized signatures within one year after the statements were sent to Halifax.

IV.

A.

The following former and current statutes are relevant to our resolution of this appeal.  Code § 8.4-401, a current statute, states in pertinent part:

> **"When bank may charge customer's account. —** (a) A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft.  An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and the bank.
>
> . . . .
>
> "(d) A bank that in good faith makes payment to a holder may charge the indicated account of its customer according to:
> "(1) the original terms of the altered item; or
> "(2) the terms of the completed item, even though the bank knows the item has been completed unless the bank has notice that the completion was improper."

Former Code § 8.4-406 stated in part:

> "**Customer's duty to discover and report unauthorized signature or alteration. —** (1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instruction of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank

4

promptly after discovery thereof.  The furnishing or making available to the customer of copies of such statement and items shall be deemed in compliance with this section.

"(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank

"(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

"(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

"(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).

"(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration."

(Emphasis added).

The General Assembly amended Code § 8.4-406 and, effective January 1, 1993, the revised statute states:

**"Customer's duty to discover and report unauthorized signature or alteration. —** (a) A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available to

5

the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount, and date of payment.

. . . .

"(c) If a bank sends or makes available a statement of account or items pursuant to subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

"(d) If the bank proves that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (c) the customer is precluded from asserting against the bank:

"(1) the customer's unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; and

"(2) the customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding thirty days, in which to examine the item or statement of account and notify the bank.

"(e) If subsection (d) applies and the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss, the loss is allocated between the customer precluded and the bank asserting the preclusion according to the extent to which the failure of the customer to comply with subsection (c) and the failure of the bank to exercise ordinary care contributed to the loss. If the customer proves that the bank did not

6

pay an item in good faith, the preclusion under subsection (d) does not apply.

"(f) Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. If there is a preclusion under this subsection, the payor bank may not recover for breach of warranty under § 8.4-207.2 with respect to the unauthorized signature or alteration to which the preclusion applies."

Code § 8.1-203, a current statute which is also a part of Virginia's Uniform Commercial Code, states: "Every contract or duty within [the Uniform Commercial Code] imposes an obligation of good faith in its performance or enforcement."

B.

Halifax argues that the circuit court erred in ruling that its claims under Code § 8.4-401 were barred by the revised Code § 8.4-406(f) because First Union allegedly acted in bad faith. Halifax, relying upon Code § 8.1-203, asserts that First Union had an obligation to act in good faith, and First Union failed to discharge that obligation when it paid checks which contained unauthorized signatures. Halifax states in its brief: "Both the original 1962 Code and the revised 1990 Code make clear that if a bank acts in bad faith, it cannot claim the one-year preclusion of 4-406. That interpretation is reached two ways: either by reference to

7

the first subsection of 4-406, or to the last.  Neither subsection has changed substantively in the revised Code."

Continuing, Halifax states in its brief:  "The first subsection, 4-406(1) of the 1962 Code, referred to the bank returning 'items paid in good faith.'  . . . Under the revision, that subsection has been expanded to three subsections, § 8.4-406(a)-(c) of the 1990 Code, adding document retention periods when the bank does not return items to the customer.  In the rewrite, the first subsection no longer refers to the return of 'items paid in good faith,' but to the return of 'items paid.' . . . No mention is made in the Official Comments, as it clearly would be for such a momentous change, that because of this rewrite items no longer need be paid in good faith.  Indeed, the Official Drafting History of revised 4-406, entitled 'Reason for 1990 Change' states that apart from changes explained there and in the Official Comments:  'The other modifications are made to conform with current legislative drafting practices, with no intent to change substance.' . . . Any separate reference to good faith would be redundant, as all duties are subject to § 8.1-203."

We disagree with Halifax's contentions.  Initially, we observe that we must confine our inquiry to the statutory language contained in Code §§ 8.4-406 and 8.1-203.  We have

repeatedly articulated principles of statutory construction that we must apply when statutes are clear and unambiguous.

> "While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed."

Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934); accord Weinberg v. Given, 252 Va. 221, 225, 476 S.E.2d 502, 504 (1996); Turner v. Wexler, 244 Va. 124, 127, 418 S.E.2d 886, 887 (1992); Grillo v. Montebello Condominium Owners Assoc., 243 Va. 475, 477, 416 S.E.2d 444, 445 (1992); Barr v. Town & Country Properties, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990).

When analyzing a statute, we must assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words when we apply the statute. Barr, 240 Va. at 295, 396 S.E.2d at 674. Additionally, when the General Assembly includes specific language in one section of a statute, but omits that language from another section of the statute, we must presume that the exclusion of the language was intentional. See, e.g., Turner, 244 Va. at 127, 418 S.E.2d at 887.

9

Code § 8.4-406 imposes certain duties upon bank customers to discover and report unauthorized signatures or alterations. Code § 8.4-406(a) provides that a bank which elects to send or make available to a customer a statement of account showing payment of items for the account must provide certain information to the customer.

Code § 8.4-406(c) imposes a duty upon a customer to exercise reasonable promptness to examine the bank statement or items to determine whether any payment was not authorized because of an alteration or unauthorized signature. Code § 8.4-406(c) also imposes a duty upon the customer to promptly notify the bank of the relevant facts. Code § 8.4-406(c) does not limit the scope of the customer's duty to those items that the bank paid in good faith.

By contrast, subsection 1 of the _former_ version of Code § 8.4-406 also imposed a duty upon bank customers to examine their bank statements and report any alterations or unauthorized signatures. However, the duty imposed upon bank customers by _former_ Code § 8.4-406 applied only with respect to items paid in good faith by the bank. The _former_ Code provision stated: "When a bank sends to its customer a statement of account accompanied by items paid _in good faith_ in support of the debit entries . . . the customer must exercise reasonable care and promptness to examine the

10

statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof."

Current Code § 8.4-406(d), which precludes a customer from asserting a claim against a bank for a loss caused by an unauthorized signature or alteration in certain prescribed circumstances, provides that this preclusion does not apply if the bank failed to pay an item in good faith. Code § 8.4-406(d) explicitly limits the preclusion to items "paid in good faith by the bank." Additionally, the General Assembly also expressly used the phrase "good faith" in Code § 8.4-406(e). This provision states in relevant part: "If the customer proves that the bank did not pay an item in good faith, the preclusion under subsection (d) does not apply."

Code § 8.4-406(f) bars a customer, who received a statement or item from a bank but failed to discover or report the customer's unauthorized signature or alteration on the item to the bank within one year after the statement or item is made available to the customer, from asserting a claim against the bank for the unauthorized signature or alteration. The customer's compliance with this one-year statutory notice provision is a condition precedent to the customer's right to file an action against the bank to recover losses caused by the unauthorized signature or alteration. Code § 8.4-406(f)

11

is devoid of any language which limits the customer's duty to discover and report unauthorized signatures and alterations to items paid in good faith by the bank.  The absence of the phrase, "good faith," in the language chosen by the General Assembly compels this Court to conclude that a bank's statutory right to assert a customer's failure to give the statutorily prescribed notice is not predicated upon whether the bank exercised good faith in paying the item which contained the unauthorized signature or alteration.  If the General Assembly had intended to limit the preclusion contained in Code § 8.4-406(f) to items paid in good faith, the General Assembly would have done so explicitly.  See Allstate Insurance Co. v. Eaton, 248 Va. 426, 430, 448 S.E.2d 652, 655 (1994).

We recognize that neither the Official Comments to the Uniform Commercial Code nor the Virginia Comments to the Uniform Commercial Code contain any commentary discussing whether a bank, which asserts as a defense the customer's failure to give the statutorily prescribed notice in Code § 8.4-406(f), must have exercised good faith when the bank paid the item which contains the unauthorized signature or alteration.  However, as we have stated in another context, "while official Comments concerning the Uniform Commercial Code are frequently helpful in discerning legislative intent,

12

they should not become devices for expanding the scope of Code sections where language within the sections themselves defies such an expansive interpretation." Leake v. Meredith, 221 Va. 14, 17, 267 S.E.2d 93, 95 (1980). Certainly, the absence of Official Comments on this issue does not permit this Court to add the phrase "good faith" to Code § 8.4-406(f). And, as we have already noted, the General Assembly, which included the phrase "good faith" in Code § 8.4-406(d) and -406(e), did not include that phrase in § 8.4-406(f).

We acknowledge, as Halifax observes, that Code § 8.1-203 provides that every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance. Code § 8.1-203, however, does not require that a bank asserting the preclusion contained in Code § 8.4-406(f) demonstrate that it paid the unauthorized items in good faith.

Code § 8.1-203 is a statute of general application whereas Code § 8.4-406 is a statute of specific application. "[W]hen one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, . . . where they conflict, the latter prevails." Dodson v. Potomac Mack Sales & Service, 241 Va. 89, 94-95, 400 S.E.2d 178, 181 (1991) (quoting Virginia Nat'l Bank v. Harris, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979)); accord County of Fairfax v. Century Concrete Services, 254 Va.

13

423, 427, 492 S.E.2d 648, 650 (1997); City of Winchester v. American Woodmark, 250 Va. 451, 460, 464 S.E.2d 148, 153 (1995).  Thus, to the extent any conflict exists between Code § 8.1-203 and § 8.4-406(f), we must apply the statute of specific application, in this instance, Code § 8.4-406(f). And, as we have already concluded, the exclusion of the good faith requirement in Code § 8.4-406(f) was intentional, and the General Assembly did not intend to impose that requirement upon a bank which asserted that a customer was precluded from recovering against it because the customer failed to discover and report an unauthorized signature or alteration on an item within the prescribed one year.

C.

Halifax alleged in its motion for judgment that it had claims of negligence, gross negligence, and recklessness against First Union, which paid checks purportedly bearing forged indorsements.  In support of its purported claims, Halifax cited Code §§ 8.3A-404, -405, -406, and Code § 8.4-406 in its motion for judgment.  The circuit court granted First Union's motion for summary judgment.

Halifax contends that the circuit court erred because an issue of fact exists whether the checks that Adams negotiated contained forged indorsements.  Halifax's contentions are without merit.  Halifax did not allege in its motion for

14

judgment that Adams had forged indorsements on the checks at issue. Rather, Halifax pled that First Union paid checks which contained "forged and/or unauthorized drawer signatures." Thus, the circuit court did not err in granting the motion for summary judgment because, as a matter of law, Halifax failed to plead a cause of action based upon forged indorsements.[2]

### D.

As we have already stated, Halifax alleged in its motion for judgment that First Union breached its contract with Halifax. Halifax pled that "[t]he deposit agreement and/or corporate banking authorization . . . authorized [First Union] to recognize certain signatures specifically indicated in the agreement and/or corporate banking authorization, in the payment of funds or transaction of business on the account." The circuit court granted First Union's motion for summary judgment on the contract claim because First Union's contract with Halifax was subject to the provisions of Virginia's

---

[2] Even though the circuit court did not decide this issue, we have serious reservations regarding whether Halifax would have had a cause of action under Code §§ 8.3A-404, -405, -406, and § 8.4-406 even if it had pled that Adams had affixed forged indorsements to the checks at issue. Code § 8.3A-404 governs indorsements made by imposters and fictitious payees. Code § 8.3A-405 deals with an employer's responsibility for a fraudulent indorsement by an employee. Code § 8.3A-406 precludes a customer from recovering sums improperly paid by a

15

Uniform Commercial Code.  Halifax argues that the circuit court erred.  We disagree.

Code § 8.1-103, a part of Virginia's Uniform Commercial Code, states in relevant part:

> "Unless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

We hold that Title 8.4, which governs the relationships between a bank and its customers, delineates the rights of a customer against its drawee bank for the improper payment of checks drawn on the customer's account.  The principles of contract law, which Halifax purportedly pled, have been displaced by the Uniform Commercial Code, which was enacted to promote uniformity, predictability, and finality in certain types of commercial transactions.  We will not permit Halifax to circumvent the Uniform Commercial Code by asserting a breach of contract claim that has been displaced.

### V.

In summary, we hold that Halifax's claims under Code § 8.4-401 are barred because Halifax failed to satisfy the condition precedent in Code § 8.4-406(f).  We also hold that

---

bank if the customer's own negligence contributed to a forged signature or alteration of an instrument.

Halifax failed to allege a cause of action based upon forged indorsements, and Halifax's claim that First Union breached the "deposit agreement and/or corporate banking authorization" is displaced by the Uniform Commercial Code.

In view of our holdings, we need not address Halifax's remaining contentions. Accordingly, we will affirm the judgment of the circuit court.[3]

Affirmed.

---

[3] We observe that the circuit court's final judgment incorporates by reference the circuit court's opinion letter. We do not agree with all the rulings contained in that letter, but those rulings are not germane to this Court's opinion.