PRESENT: All the Justices

VIRGINIA BROADCASTING CORPORATION

                                        OPINION BY
v.  Record No. 122013             JUSTICE DONALD W. LEMONS
                                        OCTOBER 31, 2013
COMMONWEALTH OF VIRGINIA, ET AL.


        FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                    Edward L. Hogshire, Judge

     In this appeal, we consider whether the Circuit Court of

the City of Charlottesville ("trial court") erred in denying

Virginia Broadcasting Corporation's ("VBC") request to have a

camera in the courtroom to broadcast the sentencing of George W.

Huguely, V.

                    I.  Facts and Proceedings

     George W. Huguely, V ("Huguely") was tried and convicted in

February 2012, of murdering his former girlfriend, Yeardley Love

("Love").  Both Huguely and Love were students at the University

of Virginia at the time of Love's death.  Huguely's subsequent

trial received extensive publicity.  On April 16, 2012, VBC, the

owner of a television station in Charlottesville, Virginia,

filed a "Request for Electronic Media and/or Still Photography

Coverage of Judicial Proceedings," in the trial court,

requesting permission to broadcast Huguely's sentencing hearing,

which was scheduled for August 30, 2012.  The trial court had

previously denied VBC's request to have a camera in the

courtroom during Huguely's trial.

The trial court held a hearing on VBC's request on July 25, 2012. At the hearing, VBC argued that because this was a sentencing hearing, many of the trial court's concerns about the impact of cameras on jurors and witnesses, which had been expressed during the hearing on VBC's request to broadcast the portion of the trial to determine guilt or innocence, would no longer be implicated. VBC argued there was no "good cause for keeping a camera out of the sentencing" hearing, and that any "prejudice to the defendant in this case is just almost de minimus at this point in the proceedings."

The Commonwealth and Huguely both opposed having cameras in the courtroom for the sentencing hearing. The Commonwealth argued that the cameras would have a detrimental impact on any witnesses testifying at the sentencing hearing. Huguely also argued that having a camera in the courtroom and live coverage of the hearing would have a negative impact on the proceedings, and could influence the testimony of certain witnesses. Huguely asserted that VBC had failed to articulate any substantial change in circumstances that would warrant the trial court's reconsideration of its previous ruling to keep cameras out of the courtroom.

VBC responded that neither the Commonwealth nor Huguely had offered evidence of prejudice or established good cause for excluding cameras from the sentencing hearing. The trial court

explained that it was concerned about the effect of cameras on the witnesses at the sentencing hearing and the effect of coverage on potential witnesses and jurors in a pending civil suit that Love's family had filed against Huguely. The trial court denied VBC's request.

VBC filed a motion for reconsideration and maintained that the trial court was treating print media and broadcast media differently. VBC asserted and that "[t]he First Amendment to the United States Constitution as well as Article [I], Section 12 of the Constitution of Virginia affords the same protections to all newsgathering activities, regardless whether the media form is print or broadcast," and therefore the trial court was required to grant its request. VBC also argued that no evidence was presented to establish "good cause" for excluding cameras from the courtroom. VBC asserted that the arguments of counsel and the court's speculation about the possible effects of cameras on witnesses or on some future civil action were not evidence and did not constitute "good cause" as required by Code § 19.2-266. The trial court denied the motion for reconsideration without a hearing.

VBC filed a petition for appeal with this Court, and we awarded an appeal on the following assignments of error:

1. The trial court erred by failing to apply a "good cause shown" standard, instead believing that it had unfettered discretion pursuant to Section 19.2-266 of the Code of

3

Virginia to prohibit the use of a camera during the sentencing of Mr. George Huguely.

2. The trial court erred in denying Virginia Broadcasting's request to use a camera to cover the sentencing of Mr. George Huguely because there was no "good cause shown" pursuant to Section 19.2-266 of the Code of Virginia since no evidence was presented in the record to support that finding.

3. The trial court erred in relying on its own speculation and the speculations of counsel for Mr. George Huguely and the Charlottesville Commonwealth's Attorney in denying Virginia Broadcasting Corporation's request for electronic media coverage of the sentencing of Mr. George Huguely.

4. The trial court erred in holding that Virginia Broadcasting Corporation's newsgathering and reporting activities via electronic media were entitled to no protection under the First Amendment to the United States Constitution or the Constitution of Virginia, including its denial of Virginia Broadcasting's request to use a camera to acquire the news while allowing the print media to use the primary tools of its trade.

## II. Analysis

### A. Standard of Review

The Commonwealth asserts in its brief that because Code § 19.2-266 provides that the decision whether to permit cameras in a courtroom is "solely" within the discretion of the trial court, such a decision is not subject to review by this or any other court. The question whether a circuit court's exercise of its discretion under Code § 19.2-266 is subject to appellate review involves a matter of statutory interpretation, a pure question of law which we review de novo. See Osman v. Osman, 285 Va. 384, 389, 737 S.E.2d 876, 878 (2013).

4

Code § 19.2-266 governs media coverage of judicial proceedings. It states in relevant part:

> In the trial of all criminal cases, whether the same be felony or misdemeanor cases, the court may, in its discretion, exclude from the trial any persons whose presence would impair the conduct of a fair trial, provided that the right of the accused to a public trial shall not be violated.
>
> A court may <u>solely in its discretion</u> permit the taking of photographs in the courtroom during the progress of judicial proceedings and the broadcasting of judicial proceedings by radio or television and the use of electronic or photographic means for the perpetuation of the record or parts thereof in criminal and in civil cases, but only in accordance with the rules set forth hereunder. In addition to such rules, the Supreme Court and the Court of Appeals shall have the authority to promulgate any other rules they deem necessary to govern electronic media and still photography coverage in their respective courts. The following rules shall serve as guidelines, and a violation of these rules may be punishable as contempt:
>
> Coverage Allowed.
>
> 1. The presiding judge shall at all times have authority to prohibit, interrupt or terminate electronic media and still photography coverage of public judicial proceedings. The presiding judge shall advise the parties of such coverage in advance of the proceedings and allow the parties to object thereto. <u>For good cause shown</u>, the presiding judge may prohibit coverage in any case and may restrict coverage as he deems appropriate to meet the ends of justice.

Code § 19.2-266 (emphasis added).

5

The General Assembly has used the phrase "sole discretion" in several other instances in the Code. See, e.g., Code § 19.2-163(2) (granting trial judge "sole discretion" to determine amount paid appointed counsel); Code § 22.1-294(D) (granting school board "sole discretion" to reassign and reduce salary of principal, assistant principal or supervisor); Code § 44-93.2 (for member of Virginia National Guard, Virginia Defense Force, or naval militia, choice of leave to take from nongovernmental employment shall be "solely within the discretion of the member"); and Code § 51.1-156(H) (Medical Board's decision to waive ninety-day notification period is "solely in its own discretion").

In three other instances, the Code not only grants sole discretion to a decision maker, but states that such a decision is not subject to judicial review. See, e.g., Code § 2.2-4011(D) (allowing Governor in his "sole discretion" to approve an extension of emergency regulation and such approval "shall not be subject to judicial review"); Code § 10.1-104.6(E) (allowing Virginia Soil and Water Conservation Board, director, or court sole discretion to agree to supplemental environmental project, a decision which "shall not be subject to appeal"); Code § 2.2-3014(C) (granting State Inspector General "sole discretion" in splitting whistleblower reward and such decision "shall not be appealable").

We have repeatedly said that, "[w]hen interpreting and applying a statute, we 'assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words.'" Kiser v. A.W. Chesterton Co., 285 Va. 12, 19 n.2, 736 S.E.2d 910, 915 n.2 (2013) (quoting Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 100, 546 S.E.2d 696, 702 (2001)); accord Rives v. Commonwealth, 284 Va. 1, 3, 726 S.E.2d 248, 250 (2012). Therefore, "'when the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional.'" Rives, 284 Va. at 3, 726 S.E.2d at 250, (quoting Zinone v. Lee's Crossing Homeowners Ass'n, 282 Va. 330, 337, 714 S.E.2d 922, 925 (2011)).

The General Assembly has granted "sole discretion" to make certain decisions in several instances in the Code. The General Assembly has also explicitly stated in at least three of those situations that such a decision is not subject to judicial review. Code § 19.2-266 contains no such language removing the trial court's decision from judicial review. We hold that the trial court's decision under Code § 19.2-266 is subject to judicial review, albeit under a highly deferential abuse of discretion standard.

7

B. Mootness

Huguely's sentencing hearing has already taken place. VBC was not permitted to broadcast the hearing. Generally, a case is moot and must be dismissed when the controversy that existed between litigants has ceased to exist. The Daily Press, Inc. v. Commonwealth, 285 Va. 447, 452, 739 S.E.2d 636, 639 (2013). Neither party asserts that the matter is moot, but their agreement cannot resolve the question for the Court. "Whenever it appears ... that there is no actual controversy between the litigants ... it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case." E.C. v. Va. Dep't of Juvenile Justice, 283 Va. 522, 530, 722 S.E.2d 827, 831 (2012) (quoting Franklin v. Peers, 95 Va. 602, 603, 29 S.E. 321, 321 (1898)).

However, as we recently explained in Daily Press,

> the Supreme Court of the United States has recognized that the mootness doctrine may be inapplicable when a proceeding is short-lived by nature. See, e.g., Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 563 (1980); Gannett Co. v. DePasquale, 443 U.S. 368, 377 (1979); Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 546-47 (1976). "If the underlying dispute is capable of repetition, yet evading review, it is not moot." Richmond Newspapers, Inc., 448 U.S. at 563 (internal quotation marks and citation omitted).

285 Va. at 452, 739 S.E.2d at 639. This case fits squarely within this exception to the mootness doctrine.

8

First, VBC, as the owner of a television station that routinely covers trials in the Central Virginia area, is likely to make future requests to broadcast judicial proceedings. Second, if we decline to address the issues in this case on the grounds of mootness, the dispute will evade review. The trial court entered the order denying VBC's request for electronic media coverage of the sentencing hearing on August 30, 2012, the day of the hearing VBC wished to broadcast. VBC had no opportunity to appeal that order before the sentencing hearing occurred. As we discussed in Daily Press, "[c]riminal trials are typically of short duration," and the trial or other judicial proceedings would likely be concluded before our appellate review is completed. Id. at 453, 739 S.E.2d at 639. Accordingly, we conclude that the controversy before us is not moot, and we now turn to the merits.

## C. Code § 19.2-266

VBC argues that the trial court should have applied the good cause shown standard in Rule 1 of the statute when deciding whether to deny VBC's request to broadcast the sentencing hearing. The Commonwealth argues that the decision whether to permit cameras in the courtroom was solely within the trial court's discretion.

It is well-settled that "we determine the General Assembly's intent from the words contained in the statute."

9

*Alger v. Commonwealth*, 267 Va. 255, 259, 590 S.E.2d 563, 565 (2004) (internal quotation marks omitted).  Accordingly, "[w]hen a statute is unambiguous, we must apply the plain meaning of that language."  *Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 706, 733 S.E.2d 250, 256 (2012).  "[W]hen the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning."  *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).

A statute is ambiguous when its language is "capable of more senses than one, difficult to comprehend or distinguish, of doubtful import, of doubtful or uncertain nature, of doubtful purport, open to various interpretations, or wanting clearness or definiteness," particularly where its words "have either no definite sense or else a double one."  *Ayres v. Harleysville Mut. Casualty Co.*, 172 Va. 383, 393, 2 S.E.2d 303, 307 (1939) (internal quotation marks omitted).

This statute is not a model of clarity.  On its face, it contains two different standards that arguably apply when a trial court decides to prohibit cameras in a courtroom.  We therefore will consider the meaning of the statute in light of the canons of construction and its legislative history.

### D. Legislative History

Prior to 1987, Code § 19.2-266 prohibited cameras in the courtroom.  It read, in relevant part, that

> A court <u>shall not permit</u> the taking of photographs in the courtroom during the progress of judicial proceedings or the broadcasting of judicial proceedings by radio or television, but may authorize the use of electronic or photographic means for the perpetuation of the record or parts thereof.

Former Code § 19.2-266 (1983 Repl. Vol.) (emphasis added).  In 1987, the General Assembly created an experimental program, administered by this Court, to allow electronic media and still photography coverage in a limited number of courts.  1987 Acts ch. 580.  Code § 19.2-266 was amended to include language describing the experimental program.  The statute was also amended to include guidelines for the six courts that were part of the experimental program.  Rule 1 of the guidelines stated:

> The presiding judge shall at all times have authority to prohibit, interrupt or terminate electronic media and still photography coverage of public judicial proceedings.  The presiding judge shall advise the parties of such coverage in advance of the proceedings and shall allow the parties to object thereto.  For good cause shown, the presiding judge may prohibit coverage in any case and may restrict coverage as he deems appropriate to meet the ends of justice.

Former Code § 19.2-266 (1983 Repl. Vol. & Cum. Supp. 1987).

In 1992, the General Assembly ended the experimental program and revised Code § 19.2-266 to permit the use of cameras

11

in courtrooms. 1992 Acts ch. 557.  Specifically, the second and third paragraphs of the statute were revised to appear in their current form, as follows:

> A court may solely in its discretion permit the taking of photographs in the courtroom during the progress of judicial proceedings and the broadcasting of judicial proceedings by radio or television, and the use of electronic or photographic means for the perpetuation of the record or the parts thereof in criminal and in civil cases, but only in accordance with the rules hereunder. In addition to such rules, the Supreme Court and the Court of Appeals shall have the authority to promulgate any other rules they deem necessary to govern electronic media and still photography coverage in their respective courts.  The following rules shall serve as guidelines, and a violation of these rules may be punishable as contempt:
>
> Coverage Allowed.
>
> 1. The presiding judge shall at all times have authority to prohibit, interrupt or terminate electronic media and still photography coverage of public judicial proceedings.  The presiding judge shall advise the parties of such coverage in advance of the proceedings and shall allow the parties to object thereto.  For good cause shown, the presiding judge may prohibit coverage in any case and may restrict coverage as he deems appropriate to meet the ends of justice.

Code § 19.2-266 (emphasis added).  The phrase "may solely in its discretion" replaced the prior language "shall not."  The language that originally stated the guidelines applied only to courts in the experimental program was removed, and the

12

guidelines became part of this statute without any further revisions or modifications.

The 1992 revisions to Code § 19.2-266 demonstrate that when the General Assembly changed the statute from one which did not permit cameras in the courtroom to one which did, it clearly intended to give the trial court great discretion in making the initial determination whether to permit still photography or cameras in the courtroom. The General Assembly included the phrase "solely in its discretion," a phrase which clearly gives great discretion to a trial court when making its decision.

The guidelines, entitled "Coverage Allowed," were originally drafted only to apply to the six courts where coverage was allowed under the experimental program. Clearly, they were only intended to be implicated once coverage had been permitted through the experimental program. In 1992, when the General Assembly ended the experimental program and gave courts the power to decide whether to permit coverage, it left the guidelines in the statute so that once a court had made a decision to permit coverage, that court had the guidelines to follow to ensure that such coverage was handled properly.

E. Application of Legislative History
to Code § 19.2-266

From this legislative history, we conclude that Code § 19.2-266 in its current form gives trial courts the sole

discretion to determine whether to <u>permit</u> the taking of photographs in the courtroom or the broadcasting of judicial proceedings by radio or television. Logically, the power to permit coverage also includes the power to not permit coverage. It is only after a trial court has made a decision to permit electronic media in the courtroom that the guidelines listed in Code § 19.2-266 under the heading "Coverage Allowed" are implicated. If coverage is permitted, the statute provides that such coverage must be conducted "in accordance with the rules set forth hereunder." Code § 19.2-266.

A trial judge who has made the initial decision to permit electronic media in the courtroom must then comply with all the guidelines, including Rule 1 of the statute, and "shall advise the parties of such coverage" in advance of the proceeding. In accordance with Rule 1, if a party objects to the coverage, then the party must show good cause why the coverage should be restricted or prohibited. Essentially, the objecting party must demonstrate good cause why the trial judge's initial decision to permit coverage should be reversed, and coverage prohibited or restricted in some manner.

VBC cites the decisions of the Court of Appeals in <u>Diehl v. Commonwealth</u>, 9 Va. App. 191, 385 S.E.2d 228 (1989), and <u>Novak v. Commonwealth</u>, 20 Va. App. 373, 457 S.E.2d 402 (1995), as support for its position that the "good cause" standard applies

14

to the trial court's decision to permit or prohibit coverage. However, in both of those cases the trial court had already made an initial determination to permit coverage. The court, the parties, and the media were then required to comply with the guidelines, including Rule 1 as set out in Code § 19.2-266. The defendants, who opposed coverage, accordingly had the burden of demonstrating "good cause" to prohibit or restrict the coverage. The trial court and Court of Appeals found that in both cases the defendants had failed to demonstrate "good cause." Diehl, 9 Va. App. at 197, 385 S.E.2d at 232; Novak, 20 Va. App. at 390-91, 457 S.E.2d at 410. These cases do not support VBC's argument that the trial court had to apply the good cause standard in its initial determination whether to permit cameras in the courtroom. They involve factual scenarios where the trial court had already made an initial decision to permit cameras, and therefore the guidelines, including Rule 1 and its good cause standard, had become applicable.

The trial court in this case made an initial determination not to permit electronic media in the courtroom. The initial decision whether to permit electronic media coverage in the courtroom is solely within the discretion of the trial court. Code § 19.2-266. Because coverage was not permitted, the "Coverage Allowed" guidelines, including Rule 1, were never implicated. Accordingly, we hold that that the trial court did

15

not abuse its discretion by failing to apply a good cause shown standard in its initial determination whether to permit coverage of Huguely's sentencing hearing.

We acknowledge that, in practice, a request for media coverage is filed and a hearing is often held before the trial court, "solely in its discretion," makes its initial decision. That hearing may consist only of argument from the parties, or the parties may put on evidence. But under the statute, a hearing is not required prior to a court's initial determination whether to permit coverage.

If, however, a trial court makes the decision to permit coverage, it is then required to advise the parties of its decision in advance of the proceedings. If a trial court permits coverage, then a party requesting further restriction or prohibition must demonstrate good cause for such further action.

The trial court in this case was not required to apply the good cause standard for its initial determination whether to permit a camera in the courtroom. Such a decision is made in the court's sole discretion. There is no requirement that evidence be presented to the trial court to support the initial decision, and the trial court is not required to explain its reasons for denying a request.

In this case, the trial court did explain its reasons for denying VBC's request at the conclusion of the July 25, 2012

16

hearing.  The trial court articulated its concerns about the effect of cameras in the courtroom and the world-wide coverage of the case on potential witnesses, and how broadcasting the sentencing hearing might impact potential jurors in a pending civil suit against Huguely.  The reasons the trial court gave on the record for denying this request do not constitute an abuse of discretion.

The Supreme Court of the United States has long recognized "that witness testimony may be chilled if broadcast." Hollingsworth v. Perry, 558 U.S. 183, 194, (2010); see also Estes v. Texas, 381 U.S. 532, 547 (1965).  The trial judge in the present case explained that the witnesses in the Huguely case were young, almost all college-aged, that the media coverage of the trial had been "intense," and that he was very concerned about how the media coverage would impact their willingness to come forward and testify.  The Supreme Court of the United States has held that cameras in a courtroom can have a chilling effect on witnesses.  It was not an abuse of discretion for the trial court to consider that factor when deciding whether to permit coverage of the sentencing hearing.

The trial court also expressed its concern that enhanced media coverage would further impact potential jurors in a pending civil suit against Huguely.  The trial court was certainly within its discretion to consider the impact media

coverage could have on a pending civil suit involving the defendant and the victim's family.  The trial court also properly considered the opposition of both the Commonwealth and Huguely to the request.

## F. No Constitutional Right to Broadcast Criminal Proceedings

VBC's last assignment of error contends that "the trial court erred in holding that [VBC's] newsgathering and reporting activities via electronic media were entitled to no protection under the First Amendment to the United States Constitution or the Constitution of Virginia, including its denial of [VBC's] request to use a camera to acquire the news while allowing the print media to use the primary tools of its trade."  VBC correctly acknowledges in its opening brief to this Court that neither the Supreme Court of the United States nor this Court have held that a broadcaster has a constitutional right to use cameras in court to gather and report the news.  Additionally, VBC conceded at oral argument that there is no constitutional right to have cameras in a courtroom.

## III. Conclusion

We hold that the trial court did not abuse its discretion when it denied VBC's request to have a camera in the courtroom during Huguely's sentencing hearing, and we will affirm its judgment.

18

Affirmed.