## CIRCUIT COURT OF BUCHANAN COUNTY

The Voice *et al.*

v.

Appalachian Regional
Community Services, Inc.

November 10, 2014

Case No. 483-13

BY JUDGE PATRICK R. JOHNSON

The above-styled case is now before the Court following the hearing on July 15, 2014. This cause was appealed on July 9, 2013, from an Order entered in the General District Court of Buchanan County denying The Voice's request for public records pursuant to the Virginia Freedom of Information Act.

Appalachian Regional Community Services (hereinafter "ARCS") is an organization operating the Buchanan Daycare center in Buchanan County, Virginia. The Voice, a regional newspaper, has sought various financial records from ARCS under the Virginia Freedom of Information Act, but ARCS has repeatedly denied its requests. The Voice argues that ARCS is a public body within the meaning of the Act and, therefore, must provide the requested information. The case was first heard in the Buchanan County General District Court on June 20, 2013, where The Voice's petition was denied.

Pursuant to § 16.1-106 of the Code of Virginia (1950), as amended, The Voice exercised its right to appeal the Order of the General District Court. On July 15, 2014, this Court heard the case *de novo*, and the parties presented oral argument in support of their respective positions. At the close of the hearing, the Court directed ARCS to file its financial records with the Court under seal in order to conduct an *in camera* review of the documents. After thorough review of the court file, the arguments of counsel, and the documents filed under seal, the Court now makes the following ruling.

## I. *Virginia Freedom of Information Act*

Pursuant to the Virginia Freedom of Information Act (hereinafter "the FOIA"), Va. Code Ann. § 2.2-3700 *et seq.*, "all public records shall be open to inspection and copying by any citizens of the Commonwealth during the regular hours of the custodian of such records." Va. Code Ann. § 2.2-3704. The FOIA defines "public body" as "any legislative body, authority, board, bureau, commission, district, or agency of the Commonwealth or of any political subdivision of the Commonwealth, including cities, towns and counties, municipal councils, governing bodies of the counties, school boards, and planning commissions; boards of visitors of public institutions of higher education; and *other organizations, corporations, or agencies in the Commonwealth supported wholly or principally by public funds.*" Va. Code Ann. § 2.2-3701 (emphasis added). As directed by the General Assembly, "[t]he provisions [of FOIA] shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government." Va. Code Ann. § 2.2-3700.

At the July 15th hearing, the Court heard substantial argument over the definition of the term "public body." The controversy centers on the meaning of the phrase "supported . . . principally by public funds." This phrase is not defined within the FOIA, nor has it been interpreted by a court of this Commonwealth. Thus, the Court is tasked with deciphering this statutory language before turning to the merits of this case.

The objective of statutory interpretation is to "ascertain and give effect to the intention of the legislature." *Chase v. DaimlerChrysler Corp.*, 266 Va. 544, 548, 587 S.E.2d 521, 522 (2003). When considering an unambiguous statute, the legislature's intent "is usually self-evident from the words used in the statute." *Boyton v. Kilgore*, 271 Va. 220, 227, 623 S.E.2d 922, 925-26 (2006). Courts "must assume that the General Assembly chose, with care, the words it used in enacting the statute." *Halifax Corp. v. First Union Nat'l Bank*, 262 Va. 91, 101, 546 S.E.2d 696, 702 (2001). Thus, courts "are bound by the plain meaning of that language . . . unless a literal interpretation of the language would result in a manifest absurdity." *Lucas v. Woody*, 287 Va. 354, 360, 756 S.E.2d 447, 459 (2014) (*quoting Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007)).

Issues arise when a statute is ambiguous: "when its language is 'capable of more senses than one, difficult to comprehend or distinguish . . . open to various interpretations, or wanting clearness or definiteness'." *Virginia Broad Corp. v. Commonwealth*, 286 Va. 239, 249, 749 S.E.2d 313, 318 (2013) (*quoting Ayres v. Harleysville Mut. Casualty Co.*, 172 Va. 383, 393, 2 S.E.2d 303, 307 (1939)). Examining the ambiguity of a statute is not a parsing of the individual words employed but rather a general inquiry into the meaning of the statute as a whole. *See White Dog Publ., Inc. v. Culpeper Cnty. Bd of Supervisors*, 227 Va. 377, 386, 634 S.E.2d 334, 339

(2006) (holding that when construing statutory language, a court "do[es] not isolate particular words or phrases but instead, examine[s] a statute in its entirety"); *Brown v. Lukhard*, 229 Va. 316, 321-22, 330 S.E.2d 84, 87 (1985) (rejecting appellant's argument that one word rendered the statute ambiguous and analyzing § 63.1-105 as a whole). A statute is not rendered ambiguous merely because the precise meaning of a word or words is disputed. *See Lucas*, 287 Va. at 365, 756 S.E.2d at 452 (holding § 8.01-243.2 was unambiguous even though the meaning of two phrases, "such action" and "such person," were " 'difficult to comprehend' or 'lacking clearness and definiteness'.") (*quoting Brown*, 229 Va. at 321, 330 S.E.2d at 87); *see, e.g., Lamar Co., L.L.C. v. City of Richmond*, 287 Va. 248, 352, 756 S.E.2d 444, 446-47 (2014) (holding § 15.2-2307 unambiguous even though multiple definitions exist for the definition of "notwithstanding.").

The language employed in the definition of "public body" is not ambiguous; it clearly defines a class of entities which are subject to the disclosure requirements of FOIA. Therefore, the Court must apply the plain meaning of the language of the statute as guided by the legislature's intent, unless doing so would result in a "manifest absurdity." *See Conyers*, 273 Va. at 104, 639 S.E.2d at 178.

## A. *Plain Language of the Statute*

Within the definition of "public body," the meaning of the vast majority of the statute goes unquestioned; the only portion of the definition which is arguably subject to multiple interpretations, indeed the heart of the present dispute, is the term "principally." Dictionaries define the term "principal" as the "most important, consequential, or influential; chief," *Merriam-Webster's Dictionary*, "primary; most important," *Black's Law Dictionary*, "[o]f first importance" or "[i]n the first rank," *Ballantine's Law Dictionary*. The very essence of the term "principally" is that it does not delimit a specific amount; it is an adverb denoting relativity. Thus, whether something is principal depends on that which is compared to.

The General Assembly's choice of the relative term "principally" as opposed to a finite term is indicative of the legislature's intent. It bears reemphasizing that this Court "must assume that the General Assembly chose, with care, the words it used in enacting the statute." *Halifax Corp.*, 262 Va. at 101, 546 S.E.2d at 702. The legislature could have chosen a term such as "majority" or specified an exact percentage if it intended for the analysis to be dependent on some quantitative contribution of public finds. The term "majority" is defined as a part that exceeds fifty percent of the sum total. *See Black's Law Dictionary* ("A number that is more than half of a total; a group of more than fifty percent."); *Merriam-Webster Dictionary* ("a number that is greater than half of a total"). But it did not do so. The General Assembly employed the term "principally," which manifests its intent to engage in a relative comparison of each source of

an alleged public entity's funding. Accordingly, whether an organization is "supported ... principally by public funds" depends on the total contribution from public funds as measured against the number and magnitude of individual private contributions.

B. *Advisory Opinions*

The Court's interpretation of the statutory language is reaffirmed by several opinions of the Virginia Freedom of Information Advisory Council (hereinafter the "Advisory Council"). The Advisory Council envisioned two scenarios in which an organization would be deemed "principally supported." First, it recommended that any organization receiving more than two-thirds, 66.6 percent, of its funding from the public be deemed "principally supported" within the meaning of FOIA. *See* Virginia Freedom of Information Advisory Council, Advisory Opinion 35 (2001) ("As a general rule, one could construe that an entity that received at least two-thirds, or 66.6 percent, of its operating budget from government sources would be supported principally by public funds.").

Even more germane to the Court's analysis, the Advisory Council envisioned a scenario where an organization could receive public funding below the 66.6 percent benchmark but still be considered "supported principally by public funds" within the meaning of FOIA. The Advisory Council hypothesized that, if an organization received 55 percent of its funding from public sources and 45 percent from a number of small private sources, then the public funds would be the most important and principal source of funds for the organization. Thus, the Advisory Council envisioned such an organization might be "principally supported" by public funds.

## II. *Analysis*

Upon reviewing the records produced under seal, the Court finds, as a matter of fact, that ARCS received at least 54.94 percent of its financial resources from public funds. The Court notes this percentage takes the facts as they present most favorable to ARCS, namely assuming that certain funds provided by the Early Childhood Development Foundation are not public funds within the meaning of FOIA. If such funds are considered public funds, then public funding for ARCS would rise to 58.64 percent. The Court finds that ARCS received three checks from the Buchanan County General Fund totaling $316,000. In addition, the Court finds ARCS received approximately $240,000 through a number of smaller payments from private sources. The total public funding for ARCS undoubtedly falls below the 66.6 percent threshold, but the facts of the present case present a situation nearly identical to that contemplated by the Advisory Council: ARCS received three large payments from public funds while receiving a number of smaller payments from a variety of private sources.

ARCS's financial records, filed with the Court under seal, demonstrate that, in 2006 and 2007, when ARCS was an infant organization, private funds comprised nearly its entire yearly budget. Then, from October 2007 through October 2010, funds obtained from the Buchanan County General Fund were the sole source of support for ARCS; it appears no private contributions were made. From November 2010 through March 2012, ARCS was supported by a mix of public and private funds. If the monies from the Early Childhood Development Foundation are considered public funds, then ARCS received public funding through August 2012. The private funds comprised a number of small donors as well as one larger donation of approximately $37,000. From April 2012 until it closed in March 2013, ARCS appears to have been funded entirely by private funds.

Payments from the Buchanan County General Fund were the principal — indeed, the most important, chief, leading, and primary — source of funds for ARCS. These public funds provided a constant influx of capital from May 2008 through March 2012. Private funds undoubtedly provided support for ARCS throughout the years, but the private contributions were disbursed from a number of private foundations and individual patrons of ARCS's daycare services. The cumulative impact of these private funds was not insubstantial, but, with a few exceptions, the marginal impact of each private contribution was limited. On the other hand, Buchanan County was, by far, the largest single contributor, paying $316,000 of public money to ARCS. Accordingly, the Court finds ARCS was supported principally by public funds.

### III. *Conclusion*

For the aforementioned reasons, the Court finds ARCS was supported principally by public funds. Therefore, ARCS is a public body within the meaning of the FOIA.

Given the sensitive nature of these financial records, the Court will stay entry of a final order compelling their immediate disclosure to afford ARCS the opportunity to seek an interlocutory appeal, if it so chooses. If ARCS declines to exercise this option within seven days of the above requested order, the Court will enter a separate order compelling the immediate production of the requested public records.