COURT OF APPEALS OF VIRGINIA

Present: Judges Raphael, White and Senior Judge Petty
Argued at Richmond, Virginia

PUBLISHED

NAVY FEDERAL CREDIT UNION

OPINION BY
v.      Record No. 1115-22-2          JUDGE KIMBERLEY SLAYTON WHITE
AUGUST 15, 2023

DELORES B. LENTZ

FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

Mary C. Zinsner (Stacey Rose Harris; Billy B. Ruhling, II; Hirschler
Fleisher, PC; DiMuroGinsburg P.C., on briefs), for appellant.

W. Scott Greco (Greco & Greco, P.C., on brief), for appellee.


Appellant Navy Federal Credit Union challenges the circuit court's denial of its demurrer

as well as its subsequent motion for summary judgment. Finding appellee's claims present no

cause of action for which any court may provide relief, we reverse the circuit court's order

overruling the demurrer.

BACKGROUND

"Because the circuit court decided this case on demurrer[],[1] we recite properly pled facts

as alleged in the amended complaint." *Steward ex rel. Steward v. Holland Fam. Props., LLC*,

284 Va. 282, 285 (2012) (quoting *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 102 (2001)).

In March of 2019, Delores Lentz ("Lentz") received a message through Facebook from a

friend's account. This person told her of a government grant program from which he had made

---

[1] Although this case proceeded to summary judgment, the record contains no additional
documentation, testimony, or other evidence beyond the allegations in the amended complaint
and the exhibits attached thereto.

money. The person encouraged her to reach out to a contact person so that she could take advantage of the grant program. Unbeknownst to Lentz, she was communicating with a scammer who had hacked her friend's account. At the time, Lentz was 74 years old and was caring for her ill husband.

This scammer convinced Lentz to make two transfers, on successive days, via a Navy Federal Credit Union ("NFCU") branch office on March 25 and March 26, 2019. The first transfer was in the amount of $67,500 and the second $67,000. The amounts were alleged to be for an "insurance fee" and a "World Bank Fee," respectively. Both wire transfers were addressed to Prosperity Bank in Austin, Texas, with the account holder name of "Bash's ATM and Vending."

Several days after the wire transfers, Lentz realized that she had been scammed and returned to NFCU to attempt to reverse the transfers. NFCU sent two letters requesting return of the funds, but ultimately was unable to reverse the wire transfers.

In October of 2020, Lentz filed a complaint against NFCU in Henrico County Circuit Court alleging NFCU was negligent in its failure to detect the scam, citing provisions of the Bank Secrecy Act ("BSA").[2] Following NFCU's demurrer filing, the circuit court granted both NFCU's demurrer and Lentz's motion to amend.

Lentz filed an amended complaint alleging, in addition to the first negligence claim, negligence per se and breach of contract.[3] NFCU demurred to the amended complaint, arguing

---

[2] The requirements of the Bank Secrecy Act, originally established by Congress in 1970, are set out in 12 U.S.C. § 1829b, 12 U.S.C. §§ 1951-1960, 31 U.S.C. §§ 5311-5314, §§ 5316-5336, and 31 C.F.R. Chapter X (formerly 31 CFR Part 103).

[3] Lentz alleged that NFCU owed a duty to her under Code § 63.2-1606(L)(i) which states: "Financial institution staff may refuse to execute a transaction, may delay a transaction, or may refuse to disburse funds if the financial institution staff believes in good faith that the transaction or disbursement may involve, facilitate, result in, or contribute to the financial exploitation of an adult."

that under the Uniform Commercial Code ("UCC") NFCU had no duty to prevent the transfer and that Lentz otherwise failed to plead another common law or statutory duty not superseded by the UCC that NFCU had toward Lentz regarding the wire transfers. After a hearing on the demurrer, the circuit court overruled NFCU's demurrer to the amended complaint.

Next, NFCU filed a motion for summary judgment and a motion to certify the order overruling the demurrer to allow an interlocutory appeal. Following a hearing on the motions, the circuit court granted in part and denied in part NFCU's motion for summary judgment.[4] The circuit court also granted NFCU's motion to certify the order overruling the demurrer as well as its ruling on the motion for summary judgment, thus allowing this interlocutory appeal.

ANALYSIS

NFCU challenges the circuit court's overruling of its demurrer and subsequent denial, in part, of its motion for summary judgment. Primarily, NFCU argues that: 1) the BSA does not create a private cause of action; 2) Code § 63.2-1606 does not create a duty owed by NFCU to Lentz nor does Lentz allege any common law duty owed by NFCU; and 3) the UCC preempts other Virginia statutory or common law duties with respect to wire transfers. For the following reasons, we agree.

A circuit court's ruling on demurrer is a question of law that is reviewed *de novo* on appeal. *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 204 (2007). The Court accepts all facts alleged in the complaint as true and determines if the allegations within the pleading establish "a foundation in law for the judgment sought." *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122 (2006).

---

[4] The circuit court granted summary judgment as to the negligence per se claim and denied summary judgment as to the negligence and breach of contract claims.

A.  No Private Cause of Action Under the BSA or Virginia Law

1.  BSA

NFCU argues that the BSA, a regulatory statute by which banks are required to report certain information to the federal government, does not create a private cause of action.  We agree.

It is well settled that the legislature, here Congress, must expressly create a private right of action to enforce a federal statute.  *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).  "The express[ed] purpose of the [BSA] is to require the maintenance of records, and the making of certain reports, which 'have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings.'"  *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 26 (1974) (quoting 12 U.S.C. § 1829b(a)(2)).  The duties created by the BSA are those owed by a bank only to the federal government, not to any private party, including bank customers.  Other courts have also found that the BSA does not create a private cause of action.  *See In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010); *see also Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 326-27 (D. Conn. 2008).

Lentz argues that various regulations, booklets, letters, guidance and advisory publications issued by federal agencies relating to the BSA impose specific duties owed by financial institutions to customers, thus creating a private cause of action.  Among the guidance documents are those addressing the detection of potential elder financial exploitation.  However, nowhere in the statutory text of the BSA did Congress create a private cause of action for enforcement.  While Congress could have done so, "it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress."  *Alexander*, 532 U.S. at 291.  "Agencies may play the sorcerer's apprentice but not

the sorcerer himself." *Id.* As such, we find no reason to create a duty in this jurisdiction alone where Congress did not explicitly do so itself.

### 2. Virginia Statutes

NFCU argues that Code § 63.2-1606 likewise creates no duty because the language in the statute is permissive to allow a bank or credit union a "safe harbor" from violating privacy laws if they report suspected elder abuse. We agree.

"All negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person." *Steward*, 284 Va. at 286. "When the standard of care is set by statute, an act which violates the statute is a per se violation of the standard of care." *Id.* Here, Lentz alleges a duty under Code § 63.2-1606.

Code § 63.2-1606 establishes a reporting procedure for suspected elder abuse, neglect or exploitation. Eight classifications of individuals are what are referred to as mandatory reporters. Those individuals are required to make reports to the local department of social services or to the adult protective services hotline of "[m]atters giving reason to suspect the abuse, neglect or exploitation of adults." Code § 63.2-1606(A).

The staff of a financial institution is not among those listed as mandatory reporters. Instead, they are listed as permissive reporters. Code 63.2-1606(C) establishes that "[a]ny financial institution staff who suspects that an adult has been exploited financially may report such suspected financial exploitation."

Similarly, Code § 63.2-1606(L) establishes a procedure that a financial institution may use to delay or deny a financial transaction when it "believes in good faith that the transaction or disbursement many involve, facilitate, result in, or contribute to the financial exploitation of an adult."

- 5 -

The legislature specifically used the permissive "may" as opposed to "must" or "shall"[5] when defining a financial institution's obligation to report elder abuse. Likewise, the legislature's language established a procedure that was permitted but not required to be instituted when a financial institution suspected financial exploitation.

"When analyzing a statute, we must assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words when we apply the statute." *Halifax Corp. v. First Union Nat'l Bank*, 262 Va. 91, 100 (2001). The use of specific language in one section of the statute yet omitted in another part of the statute is presumed to be intentional. *Turner v. Wexler*, 244 Va. 124, 127 (1992) ("Thus, the maxim *Expressio unius est exclusio alterius* is applicable here. This maxim provides that mention of a specific item in a statute implies that omitted items were not intended to be included within the scope of the statute.").

We decline to extend a duty to mandate the reporting of elder abuse or to mandate an action by a financial institution when elder abuse is suspected where the plain language of a statute clearly says otherwise. To do so would be an abandonment of the principles of separation of powers and our deference to the legislative branch on matters of policy.

### B. Preemption By the UCC

NFCU argues that Lentz's claims are preempted by the express provisions of the UCC. We agree. In reaching this analysis, we assume without deciding that a common law duty of care may have been owed to Lentz by NFCU.

Article 4A of the UCC was promulgated in 1989 and established for the first time clear, uniform legal rules governing wire transfers in this country. Article 4A has been adopted by

---

[5] The legislature specifically used "shall" when describing the duties of the eight classes of mandatory reporters.

state legislatures, including Virginia in 1990. 1990 Va. Acts ch. 9. The UCC rules concerning wire transfers set forth in Article 4A represent "a careful and delicate balancing of [competing] interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties." Code § 8.4A-102 cmt. As such, "resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in the Article." *Id.*

Insofar as liability is concerned, the Code is clear: "[l]iability based on acceptance arises only when acceptance occurs as stated in § 8.4A-209, and liability is limited to that provided in this title." Code § 8.4A-212. Furthermore, "a receiving bank[6] . . . does not otherwise have any duty to accept a payment order or, before acceptance, to take any action, or refrain from taking action, with respect to the order except as provided in this title or by express agreement." *Id.* To make it abundantly clear, "the bank owes no duty to any party to the funds transfer except as provided in this title or by express agreement." *Id.*

The only express agreement between the parties would be the membership agreement and the incorporated important disclosures. These documents do not contain a duty requiring NFCU to police for elder abuse, specifically. Rather, the documents note that NFCU is liable to Lentz if her electronic transfer is not: 1) completed on time; 2) in the correct amount; or 3) sent to the correct recipient.

In other instances, our Supreme Court has found that the UCC preempts some common law claims against banks. *See Schlegel v. Bank of Am., N.A.*, 271 Va. 542 (2006). In *Schlegel*, plaintiffs sued defendant bank under common law negligence regarding an unauthorized wire transfer. *Id.* The Court in *Schlegel* found Code § 8.4A-204(a) preempted some of the plaintiff's

---

[6] "Receiving bank" means the bank to which the sender's instruction is addressed, while "sender" refers to the person giving instruction to the bank. Code § 8.4A-103. Here, the receiving bank is NFCU, and the sender is Lentz.

claims as they were directly addressed by the statute.[7] *Id.* Here, Code § 8.4A-212 directly addresses whether a bank has a duty to refrain from acting with respect to a duly authorized wire transfer order from its customer. Absent an express agreement to the contrary, it does not.

Turning to other jurisdictions reveals a similar understanding and uniformity in conclusions of law governing commercial transactions involving wire transfers—one of the hallmark principles of the UCC. *See* Code § 8.1A-103(a)(3). In *Chino Commercial Bank, N.A. v. Peters*, 118 Cal. Rptr. 3d 866, 875 (Cal. Ct. App. 2010), the California Court of Appeal dismissed the plaintiff's negligence claims against defendant bank because the UCC's provisions expressly laid out a bank's duties regarding wire transfers. "[T]he UCC expressly displaces common law, to the extent that its 'particular provisions' apply." *Id.* at 871. *See also Sarrouf Law LLP v. First Republic Bank*, 148 N.E.3d 1243, 1249 (Mass. App. Ct. 2020).

We hold that the UCC controls and preempts Lentz's claims of negligence outside its provisions. Lentz only alleges a breach of a duty regarding the transfer of a wire—something the UCC addresses directly. Anything else in contradiction to those explicit provisions is preempted.

## CONCLUSION

We hold that the UCC preempts Lentz's claims outside the UCC against NFCU and that she has failed to plead any cause of action for which relief can be granted. As such, NFCU's demurrer was improperly overruled.

*Reversed and final judgment.*

---

[7] Although the Court in *Schlegel* allowed some other common law claims to stand, the Court found that those claims were left unaddressed by the UCC provisions. This is contrary to this appeal where the UCC directly addresses liability for duly authorized wire transfers.

- 8 -